208 P.3d 1107 (2009)
STATE of Washington, Respondent,
v.
Covell Paul THOMAS, Petitioner.
No. 80643-8.
Supreme Court of Washington, En Banc.
Argued September 23, 2008.
Decided June 11, 2009.
*1109 Rita Joan Griffith, Attorney at Law, Mark A. Larranaga, Walsh & Larranaga, Seattle, WA, for Petitioner.
Pierce County Prosecutor's Office, Kathleen Proctor, Tacoma, WA, for Respondent.
MADSEN, J.
¶ 1 Covell Paul Thomas was convicted of premeditated first degree murder, residential burglary, and unlawful possession of a firearm on October 31, 2000. The jury found the existence of four aggravating factors and insufficient mitigating factors. The trial court sentenced Thomas to death under RCW 10.95.030. On initial review of his case, this *1110 court "affirm[ed] each of his convictions but reverse[d] his death sentence" and remanded with instructions to sentence Thomas on the first degree murder conviction and residential burglary charges alone or hold a "new trial on the aggravating factors." State v. Thomas, 150 Wash.2d 821, 876, 831, 83 P.3d 970 (2004) (Thomas I). On remand, the State did not seek the death penalty but instead sought life without the possibility of parole. On November 17, 2005, a jury found beyond a reasonable doubt that Thomas committed four aggravating factors. On the basis of the jury's decision, the trial judge sentenced Thomas to life without the possibility of parole. State v. Thomas, noted at 140 Wash.App. 1014, 2007 WL 2379653 (2007). The Court of Appeals affirmed Thomas's sentence to life in prison without parole. Thomas petitioned for review. We granted review (State v. Thomas, 163 Wash.2d 1033, 187 P.3d 269 (2008)) and affirm the Court of Appeals.

FACTS
¶ 2 Before addressing the substantive matters in Thomas's case, a brief discussion of the relevant portions of our decision in Thomas's first review is required. Thomas, 150 Wash.2d at 876, 83 P.3d 970.[1] In Thomas's first petition for review, he argued that errors in the "to convict" and accomplice liability instructions unconstitutionally reduced the State's burden of proving either premeditated intent to kill or the knowledge that he was facilitating a murder.[2]Id. at 840, 83 P.3d 970. Acknowledging errors in the instructions, we applied the test established in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), "for determining the harmlessness of a constitutional error" to Thomas's "to convict" and accomplice liability instructions. Thomas, 150 Wash.2d at 845, 83 P.3d 970. Noting Thomas's "`major participa[tion] in the murder'" (quoting respondent's brief), we stated that "[f]or the purposes of upholding Thomas's conviction for first degree murder, we find the errors in the accomplice liability and `to convict' instructions to be harmless beyond a reasonable doubt." Id. at 846, 83 P.3d 970 (alterations in original).
¶ 3 Thomas also challenged the aggravating factors instruction, claiming the instructions did not require the jury to find that he personally committed the factors alleged.[3] The aggravating factors instruction given in Thomas's trial read, "`[t]he defendant or an accomplice committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime.'" Thomas I, 150 Wash.2d at 842-43, 83 P.3d 970 (alteration in original). We held that the "or" "removes a requirement that the jury find any form of actus reus at all on Thomas's part and relieves the State of its burden to prove the aggravating circumstances as they pertain to the defendant." Id. at 843, 83 P.3d 970. Relying on State v. Roberts, 142 Wash.2d 471, 14 P.3d 713 (2000), we further held that the "instruction permits the jury to impose a death sentence on Thomas even if it finds that the aggravating factors" apply only to his accomplice. Thomas I, 150 Wash.2d at 843, 83 P.3d 970; Roberts, 142 Wash.2d at 505, 14 P.3d 713 ("[M]ajor participation by a defendant in the acts giving rise to the homicide is required in order to execute a defendant convicted solely as an accomplice to premeditated first degree murder.").
¶ 4 After noting the holding in Roberts we turned to Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to hold that harmless error analysis was inapplicable to the error in Thomas's aggravating factors instruction.[4]Thomas I, 150 *1111 Wash.2d at 849, 83 P.3d 970. Because we were unable to find the errors in Thomas's initial aggravating factors instructions harmless, we reversed Thomas death sentence and remanded to the trial court for either "a new trial on the aggravating factors or resentencing in accordance with this opinion." Id. at 876, 83 P.3d 970. On remand, the State chose not to seek the death penalty again, but chose to instead seek life without the possibility of parole.

ANALYSIS

Aggravating Factors Instruction
¶ 5 Thomas argues that the aggravating factors instruction given to the jury in the resentencing proceeding allowed him to be "sentenced to life without parole without [the] jury ever having found that he personally committed the actus reus of the crime or intended the death of the victim or that the aggravating factors applied to him rather than to an accomplice." Pet. for Review at 6.
¶ 6 In addressing the first part of Thomas's argument, it is important to recognize that "[a]ggravated first degree murder is not a crime in and of itself; the crime is `premeditated murder in the first degree ... accompanied by the presence of one or more of the statutory aggravating circumstances listed in the criminal procedure title of the code (RCW 10.95.020).'" Roberts, 142 Wash.2d at 501, 14 P.3d 713 (quoting State v. Irizarry, 111 Wash.2d 591, 593-94, 763 P.2d 432 (1988)). Aggravating factors are not "elements of [a] crime;" they are "`"aggravation of penalty"' factors." State v. Brett, 126 Wash.2d 136, 154, 892 P.2d 29 (1995) (quoting State v. Kincaid, 103 Wash.2d 304, 307, 692 P.2d 823 (1985)); see also State v. Yates, 161 Wash.2d 714, 758, 168 P.3d 359 (2007) ("[T]his court has clearly `held that under the statutory scheme in Washington the aggravating factors for first degree murder are not elements of that crime but are sentence enhancers that increase the statutory maximum sentence from life with the possibility of parole to life without the possibility of parole or the death penalty.'" (quoting Thomas I, 150 Wash.2d at 848, 83 P.3d 970)). To convict an accomplice of premeditated murder in the first degree, the State need not "show that the accomplice had the intent that the victim would be killed." State v. Guloy, 104 Wash.2d 412, 431, 705 P.2d 1182 (1985). The prosecution need only prove that the defendant knew his actions would facilitate the crime for which he was eventually charged. State v. Cronin, 142 Wash.2d 568, 581-82, 14 P.3d 752 (2000) ("The State had to prove beyond a reasonable doubt that [the defendant] had general knowledge that he was aiding in the commission of the crime of murder."). Thus, Thomas's contention that the aggravating factors instruction given here was erroneous because it allowed him to be sentenced to life without parole without a finding that he personally committed the murder is without merit. The issue is not whether Thomas committed the murder as a principle; the issue is whether he personally committed the aggravating factors.
¶ 7 Turning to the second part of Thomas's argument, when the State seeks to sentence a defendant to death for the crime of premeditated murder in the first degree, it must prove a defendant convicted as an accomplice to the murder personally committed aggravating factors. Roberts, 142 Wash.2d at 508-09, 14 P.3d 713 ("[W]e hold when jury instructions as used in this case allow for the possibility that the defendant was convicted solely as an accomplice to premeditated first degree murder, the defendant may not be executed unless the jury expressly finds (1) the defendant was a major participant in the acts that caused the death of the victim, and (2) the aggravating factors under the statute specifically apply to the defendant.").[5]
*1112 ¶ 8 The special verdict form given to the jury at Thomas's resentencing proceeding read as follows:
We, the jury, make the following answers to the questions submitted by the court:
QUESTION: Has the State proven the existence of the following aggravating circumstances beyond a reasonable doubt?
(1) Did the defendant commit the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime?
...
(2) Did the defendant commit the murder in the course of, in furtherance of, or in immediate flight from robbery in the first degree?
...
(3) Did the defendant commit the murder in the course of, in furtherance of, or in immediate flight from robbery in the second degree?
...
(4) Did the defendant commit the murder in the course of, in furtherance of, or in immediate flight from residential burglary?
...
Clerk's Papers (CP) at 202.
¶ 9 The significant difference between this verdict form and the one we held unconstitutional for the purpose of upholding Thomas's death sentence in Thomas I is the removal of the phrase "or an accomplice." Each question specifically asked if the defendant, Thomas, personally committed the aggravating factors; the jury answered yes to each question. These instructions left no chance, as there was in Thomas's first trial, that the jury could have answered yes if they thought an accomplice, rather than Thomas, committed the aggravating circumstances. See State v. Jeffries, 105 Wash.2d 398, 420, 717 P.2d 722 (1986) ("It is impossible for a jury to find ... aggravating circumstances without also finding that the defendant intended to commit them."). Thomas's jury in the resentencing proceeding found that he personally committed all four aggravating factors as required by this court in Thomas I

Due Process
¶ 10 Thomas next argues that jury instruction 1, informing the jury that Thomas had been convicted of first degree murder, "required the jury to accept as given that [he] personally committed the murder" and thereby violated his rights to due process. Pet. for Review at 8-9; CP at 179. Thomas's jury at resentencing was instructed that he had been "convicted of the crime of murder in the first degree" and that the finding of guilt should not be considered as proof of the aggravating factors. CP at 179. The jury was also informed that Thomas was one of four people charged with the murder of Richard Geist. XV Verbatim Report of Proceedings (VRP) (Nov. 15, 2005) at 1643. During the resentencing proceeding, the defense argued that Thomas's conviction did not "settle[ ] the fact that he ... actually shot Mr. Geist." Id. at 1643-44. After hearing all the evidence, and the arguments by Thomas's counsel, the jury found beyond a reasonable doubt that Thomas had personally committed all four aggravating factors.
¶ 11 "[D]ue process simply requires that the jury be instructed that the prosecution must establish its case `beyond a reasonable doubt,'" and that the defendant be "`presumed innocent.'" State v. Woods, 143 Wash.2d 561, 594, 23 P.3d 1046 (2001) (quoting In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and State v. McHenry, 88 Wash.2d 211, 220, 558 P.2d 188 (1977)). The instructions at Thomas's resentencing proceeding did not require the jury to accept as given that he personally committed *1113 the murder; they only required the jury to determine if he personally committed the aggravating factors. The question of whether the defendant committed first degree murder personally or as an accomplice was not before the jury, and whether Thomas was the principle or an accomplice is irrelevant to the question of whether he personally committed the aggravating factors. The instructions in this case meet the constitutional requirements of due process and right to trial by jury.

Comment on the Evidence
¶ 12 Thomas also argues that instruction 1 violated his right against impermissible comment on the evidence under article IV, section 16 of the Washington State Constitution. Pet. for Review at 9-10. Article IV, section 16 of the Washington State Constitution prohibits a judge from stating to the jury her personal attitude toward a case.[6] A judge makes an impermissible comment on the evidence when she inaccurately states the law applicable to an issue in the case. City of Seattle v. Smiley, 41 Wash.App. 189, 192, 702 P.2d 1206 (1985).
¶ 13 Ordinarily, in first degree murder cases where the State seeks a higher penalty on the basis of aggravating factors, the same jury hears evidence on both the elements of the underlying murder charge and the aggravating factors. The jury makes findings of aggravation via a special verdict form only after it has found a defendant guilty of first degree murder. Thus, it is unnecessary to inform the jury that the defendant has been found guilty either as a principle or as an accomplice.
¶ 14 In this case, the jury at Thomas's resentencing did not know of Thomas's guilt. In order to determine whether Thomas committed the aggravating factors, it was necessary to inform the jury of this fact. If the jury had not been given the evidence of Thomas's conviction, the jury essentially would be required to retry him on the already settled issue of guilt for the underlying murder. The judge in Thomas's resentencing did not inaccurately state the law in Thomas's case. Thomas was, in fact convicted of first degree murder; the judge did not make an impermissible comment on the evidence.

Power to Empanel a Jury
¶ 15 Thomas next argues that there is no mechanism in chapter 10.95 RCW by which the trial court can empanel a jury solely to consider the existence of aggravating factors. Specifically, he asserts that since RCW 10.95.050(4) outlines the procedures for empaneling a jury to hear the death penalty phase of a criminal trial and nothing in chapter 10.95 RCW or the Sentencing Reform Act of 1981 (chapter 9.94A RCW) provides for empaneling a jury specifically to hear aggravating factors, the trial court has no authority to empanel a jury for such a proceeding. Pet. for Review at 16-17; Suppl. Br. of Pet'r at 15. Thomas further asserts that our refusal in State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005), to create a procedure for empaneling aggravating factors juries requires us to reverse his sentence. Id. at 151-52, 110 P.3d 192 ("This court will not create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court. To create such a procedure out of whole cloth would be to usurp the power of the legislature."), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).
¶ 16 Thomas's argument fails for two reasons. First, in Hughes this court was construing the Sentencing Reform Act of 1981, not the aggravated murder statutes under which Thomas was convicted. Id. at 148-49, 110 P.3d 192; see also State v. Goldberg, 149 Wash.2d 888, 894, 72 P.3d 1083 (2003) ("RCW 10.95.020 defines the aggravating circumstances that make premeditated first degree murder punishable under that chapter rather than under the Sentencing Reform Act of 1981."). Since even Thomas himself acknowledges *1114 that his case is not controlled by the Sentencing Reform Act of 1981 (Suppl. Br. of Pet'r at 15), Hughes is inapplicable in this case.[7]
¶ 17 Second, the power to empanel a jury to hear aggravating factors is a court mandated component of the power to hear cases "required to be tried by a jury" and not a procedure crafted out of "whole cloth." CrR 6.1(a). A defendant in a criminal trial has the right to have a jury determine issues of fact. U.S. Const. art. III, § 2, para. 3 & amend. VI; Const. art. I, § 21; Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("`Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (quoting Apprendi, 530 U.S. at 490, 120 S.Ct. 2348)). As "aggravation of penalty factors," and not elements of a crime, aggravating factors need not be charged in the information, but nevertheless must be proved to a jury beyond a reasonable doubt. Kincaid, 103 Wash.2d at 312, 692 P.2d 823 ("The penalty for that murder [is] properly enhanced to life imprisonment without possibility of parole when the jury unanimously [finds] by a special verdict that the existence of a statutory aggravating circumstance had been proved by the State beyond a reasonable doubt.").
¶ 18 Court rules also specify the requirements for making special findings like aggravating factors, stating, "[t]he court may submit to the jury forms for such special findings which may be required or authorized by law." CrR 6.16(b). Prior arguments to this court that aggravating factors must be included in the elements instruction to the jury were rejected: "where the legislature has established a statutory frame work which defines a base crime which is elevated to a greater crime if a certain fact is present, a trial court may, consistent with the guaranties of due process and trial by jury, bifurcate the elevating fact into a special verdict form. So long as the jury is instructed it must unanimously agree beyond a reasonable doubt ... the constitution is not offended." State v. Mills, 154 Wash.2d 1, 10, 109 P.3d 415 (2005).[8]
¶ 19 To say the trial court under this court's mandate had no power by which to empanel a jury to hear Thomas's resentencing on aggravating factors is to say the court had no power to uphold Thomas's constitutional right to a jury. This argument is without merit. The trial court properly empaneled Thomas's jury at resentencing under CrR 6.1.

Double Jeopardy
¶ 20 Thomas next argues that "retrial on the aggravating factors violated his state and federal constitutional rights to be free of double jeopardy." Pet. for Review at 10. Both the Washington State and federal *1115 double jeopardy clauses "bar[] trial if three elements are met: (a) jeopardy previously attached, (b) jeopardy previously terminated, and (c) the defendant is again in jeopardy `for the same offense.'" State v. Eggleston, 164 Wash.2d 61, 70, 187 P.3d 233 (2008) (alteration in original) (citing State v. Corrado, 81 Wash.App. 640, 645, 915 P.2d 1121 (1996)). When a defendant's conviction is overturned on review and the defendant is retried, "the double jeopardy clause is not ordinarily offended." State v. Anderson, 96 Wash.2d 739, 742, 638 P.2d 1205 (citing United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)), cert. denied, 459 U.S. 842, 103 S.Ct. 93, 74 L.Ed.2d 85 (1982). Only when a conviction has been reversed for insufficiency of evidence does the reversal bar a retrial. Id. (citing Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)).
¶ 21 In death penalty cases, the double jeopardy clause prevents "retrying a defendant on aggravating factors ..., when a previous jury ha[s] rejected imposition of the death penalty." Eggleston, 164 Wash.2d at 70, 187 P.3d 233 (emphasis added) (citing Bullington v. Missouri, 451 U.S. 430, 446, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)). This court "has declined to extend [double jeopardy] protection against retrial to noncapital sentencing aggravators, limiting the protection to death penalty determinations." Id. at 71, 187 P.3d 233 (citing Monge v. California, 524 U.S. 721, 730, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998)).
¶ 22 This court reversed the jury's findings of aggravating factors due to errors in the jury instructions, not insufficiency of evidence. Thomas's first jury found him guilty of aggravated first degree murder and accepted the imposition of the death penalty. This court's reversal of his death sentence for instructional error and remand for further proceedings was not a final disposition of his case. Thomas was resentenced on the basis of jury findings regarding aggravating factors, double jeopardy protections, therefore, do not attach.

Batson v. Kentucky
¶ 23 Lastly, Thomas argues that the striking of juror 33, the lone African-American juror on the venire, was a violation of his rights under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Pet. for Review at 17-18. At the hearing on the Batson issue, the prosecution agreed with the defense as to the accuracy of the Batson standard and then proceeded to make "a record regarding the statements made by Juror No. 33." 7 VRP (Oct. 31, 2005) at 120. Excerpts from voir dire transcripts show that juror 33 stated as follows:
MR. THORNTON [defense counsel]: But you agree that there's some sort of, when you walk in, human nature that we make a judgment?
....
JUROR NO. 33: I think that's a stupid question. I mean Ted Bundy, did he look guilty? Jeffrey Dahmer, next-door neighbor, did he look guilty or act guilty? That's more of a racist statement than anything else. I mean, I look at this jury pool. Look at that. Is this really a makeup of Tacoma or Pierce County? This is bizarre, man.
MR. THORNTON: You agree with that statement?
JUROR NO. 33: You have more dark in the bailiff than we have in this jury pool, and that's the way the prosecutors want it.
VRP (Supp. Oct. 27, 2005) at 3-4.
¶ 24 The prosecution characterized the juror's comments as "clearly was hostile toward the State" and as such, gave a "race-neutral reason" for the State's exercise of the challenge. 7 VRP at 120-21. Thomas's counsel argued that the statement, "`I think the State would like it that way,'" was not a sufficient race-neutral reason for striking the juror. Id. at 121. After this exchange, the trial judge applied the law as it was stated in State v. Ashcraft, 71 Wash.App. 444, 459, 859 P.2d 60 (1993), that the exclusion of the lone representative of a constitutionally cognizable class from the venire is generally insufficient to establish a prima facie case of discriminatory intent and denied Thomas's Batson challenge. 7 VRP at 122.
*1116 ¶ 25 A defendant's right to "be tried by a jury whose members are selected pursuant to nondiscriminatory criteria" is founded in the equal protection clause of the Fourteenth Amendment to the United States Constitution. Batson, 476 U.S. at 85, 106 S.Ct. 1712 (citing Martin v. Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497 (1906)). A defendant challenging the State's action in venire selection must ultimately show "`a racially discriminatory purpose'" on the part of the prosecutor. Id. at 93, 106 S.Ct. 1712 (quoting Washington v. Davis, 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). The defendant's burden can be met by showing that the "totality of the relevant facts" in his case gives rise to an inference of discriminatory purpose. Id. at 94, 106 S.Ct. 1712 (citing Davis, 426 U.S. at 239-42, 96 S.Ct. 2040). After this showing, the burden shifts to the State to "come forward with a neutral explanation" for challenging the juror. Id. at 97, 106 S.Ct. 1712. After both sides have made their arguments, "[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination." Id. at 98, 106 S.Ct. 1712.
¶ 26 This court has held that a trial court is "not required to find a prima facie case [of discriminatory purpose] based on the dismissal of the only venire person from a constitutionally cognizable group, but they may, in their discretion, recognize a prima facie case in such instances." State v. Hicks, 163 Wash.2d 477, 490, 181 P.3d 831 (2008). The recognition that trial courts may but are not required to find a prima facie case on the basis of the State's strike of the lone remaining juror of a constitutionally cognizable group "afford[s] a high level of deference to the trial court's determination of discrimination." Id. at 493, 181 P.3d 831. This deference is necessary because findings of discrimination "largely turn on an evaluation of credibility," Batson, 476 U.S. at 98 n. 21, 106 S.Ct. 1712, and because a "reviewing court ... analyzes only the transcripts from voir dire [and] is not as well positioned as the trial court is to make credibility determinations." Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Even "where a trial court [finds] a prima facie case out of an abundance of caution," if the prosecutor has offered a race-neutral explanation, the ultimate issue of whether or not a "prima facie case was established does not need to be determined" to uphold the trial court's refusal to find a Batson violation. Hicks, 163 Wash.2d at 492-93, 181 P.3d 831; see also State v. Luvene, 127 Wash.2d 690, 699, 903 P.2d 960 (1995) (if "the prosecutor has offered a race-neutral explanation and the trial court has ruled on the question of racial motivation, the preliminary prima facie case is unnecessary") (citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). "A trial court's ruling on a challenge for cause is reviewed for manifest abuse of discretion." State v. Gregory, 158 Wash.2d 759, 814, 147 P.3d 1201 (2006) (citing State v. Brown, 132 Wash.2d 529, 601-02, 940 P.2d 546 (1997)).
¶ 27 At the time of Thomas's retrial on aggravating factors, neither the trial court, nor the parties had the benefit of our decision in Hicks. Although the court was mistaken as to the standard for establishing a prima facie case of discrimination, the trial court heard the State's reasons for striking the juror and found them to be race-neutral. This finding of a race-neutral motivation for striking juror 33, after hearing arguments in support of and against, is a correct application of the law: that a prima facie determination need not be had where the State has offered a race-neutral reason for exclusion of a juror from the venire. Hicks, 163 Wash.2d at 492-93, 181 P.3d 831; Luvene, 127 Wash.2d at 699, 903 P.2d 960. The trial court's decision to reject Thomas's Batson challenge was not an abuse of discretion.

CONCLUSION
¶ 28 We affirm Covell Paul Thomas's sentence of life without the possibility of parole on the bases of the jury's finding that four aggravating factors applied specifically to him.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, and J. JOHNSON, JJ.
*1117 SANDERS, J. (dissenting).
¶ 29 Trial courts are authorized by statute to empanel new juries to determine on remand whether aggravating factors are present in a conviction for murder in the first degree. RCW 10.95.050(4). But this trial court misapplied this court's instructions by having the jury consider only one of the two issues remanded by this court in State v. Thomas, 150 Wash.2d 821, 83 P.3d 970 (2004) (Thomas I). There this court held the "jury instruction and the aggravating factors special verdict form given in his case did not require the jury to find that [Covell Paul] Thomas in particular had the intent to murder [the victim] or that the aggravating factors specifically applied to him as opposed to his accomplice.... These facts must be found by the jury." Id. at 876, 83 P.3d 970.
¶ 30 The majority in Thomas I remanded to either sentence Thomas on the underlying conviction or for a new trial on the aggravating circumstances. Id. However, contrary to that holding, at the new trial the jury instructions did not permit jurors to find all of the requisite facts for which this court remanded, thus repeating the original error.
¶ 31 Furthermore, it is not "race-neutral" to strike the sole African-American from a jury pool simply because that juror expressed concerns about minority underrepresentation in that very pool. The majority is wrong to accept the trial court's reasoning that a juror who expresses concern about the racial makeup of the venire is "clearly hostile toward the state." 7 Verbatim Report of Proceedings (7 RP) at 120-21. I dissent because the trial court improperly instructed the jury at the new trial and because the trial court erred in accepting without inquiry the State's rationale for striking the sole African-American juror in the venire.

I. RCW 10.95.050(4) confers authority to a trial court to empanel a new jury on remand solely to hear evidence on the presence of aggravating factors
¶ 32 Sentencing for aggravated murder in the first degree is governed by chapter 10.95 RCW. Thomas argues there is no mechanism in chapter 10.95 RCW that empowers the trial court to empanel a new jury solely to hear evidence on the presence of aggravating factors, after a different jury has already reached a verdict on the underlying crime. The majority seems to accept this interpretation of chapter 10.95 RCW; it instead locates the trial court's power to empanel a jury in Washington State Superior Court Criminal Rules 6.1 and 6.16. I disagree with this construction of the statute.
¶ 33 RCW 10.95.050(4) provides in pertinent part:
If the defendant's guilt was determined by plea of guilty or by decision of the trial court sitting without a jury, or if a retrial of the special sentencing proceeding is necessary for any reason including but not limited to a mistrial in a previous special sentencing proceeding or as a consequence of a remand from an appellate court, the trial court shall impanel a jury of twelve persons plus whatever alternate jurors the trial court deems necessary.
(Emphasis added.)
¶ 34 The statute contemplates a situation like the one here in which a defendant is convicted of first degree premeditated murder and the jury finds aggravating factors, but then as a consequence of an appellate decision, the case is remanded for a new trial of the special sentencing proceeding on the presence of aggravating factors. In such a case, by the plain language of the statute, the trial court then has the power to empanel a new jury on aggravating factors alone.
¶ 35 This court affirmed Thomas' conviction for murder in the first degree; the question of whether aggravating circumstances were present was remanded to the trial court. This scenario puts Thomas' case squarely within the terms of RCW 10.95.050, and the trial court properly empaneled a new jury to hear the issue. Consequently, I agree with the majority that the trial court had the power to empanel a jury solely for the purpose of determining the presence or absence of factors aggravating Thomas' conviction for murder in the first degree. But I find it unnecessary to determine, as does the majority, whether a trial court would have this power to empanel juries under other statutes or court rules, given the explicit *1118 grant of authority contained in RCW 10.95.050(4). See majority at 1113-14.

II. The trial court's jury instructions on remand did not cure the error this court identified in Thomas I, so another remand is in order
¶ 36 Thomas argues the jury instructions on remand allowed him to be "sentenced to life without parole without [the] jury ever having found that he personally committed the actus reus of the crime or intended the death of the victim or that the aggravating factors applied to him rather than to an accomplice." Pet. for Review at 6. The majority states the "issue is not whether Thomas committed the murder as a principal; the issue is whether he personally committed the aggravating factors." Majority at 1111. As this is contrary to this court's holding and remand instructions in Thomas I, I disagree.
¶ 37 The original trial court found Thomas guilty of murder in the first degree, found that aggravating factors were present, and then sentenced Thomas to death. As noted by the majority, the State's theory during the original trial was that either Thomas shot the victim himself or Thomas was an accomplice to the murder. Id. at 1110 n. 2.
¶ 38 This court in Thomas I found error in the "aggravated" determination and the "to convict" instructions given to the jury. Specifically,
The "to convict" and aggravating factors instructions were erroneous in conjunction with one another because they "allow a defendant to be sentenced to death without a showing that he or she personally caused the victim's death or was a major participant in the homicidal acts."....
....
The shortcoming of [the accomplice liability] instruction is that it does not require that the defendant had knowledge he was facilitating the crime for which he was charged.
Thomas I, 150 Wash.2d at 842-43, 83 P.3d 970 (first emphasis added) (citations omitted) (quoting State v. Roberts, 142 Wash.2d 471, 506, 508-09, 14 P.3d 713, (2001)).
¶ 39 This court held the combination of the original instructions given to the jury wrongly removes the "requirement that the jury find any form of actus reus at all on Thomas's part and relieves the State of its burden to prove the aggravating circumstances as they pertain to the defendant." Id. at 843, 83 P.3d 970. This court explained these instructions permitted the jury to impose a death sentence on Thomas even if it found Thomas had neither premeditated intent to kill nor was a major participant, or that the aggravating factors applied only to his accomplice. Id. at 842-43, 83 P.3d 970.
¶ 40 Contrary to Thomas' assertion on appeal, a jury is not required to find the defendant personally killed the victim, only that he was a major participant in the events leading up to the victim's death. Id. at 842, 83 P.3d 970. However, this court remanded because the original jury instruction did not require the jury to "decide whether the aggravating factors have been proved beyond a reasonable doubt." Id. at 849, 83 P.3d 970. As this court explained, to find that the aggravating factors have been proved beyond a reasonable doubt where the jury instructions "`allow for the possibility that the defendant was convicted solely as an accomplice to premeditated first degree murder,'" a jury must expressly find: "`(1) the defendant was a major participant in the acts that caused the death of the victim, and (2) the aggravating factors under the statute specifically apply to the defendant.'" Id. at 842, 83 P.3d 970 (emphasis added) (quoting Roberts, 142 Wash.2d at 508-09, 14 P.3d 713). On remand, this court gave the prosecution the option to either seek sentencing on murder in the first degree or submit the question of aggravating factors to a new jury. Id. at 850, 83 P.3d 970.
¶ 41 The prosecution opted to submit consideration of the aggravating factors to a new jury, which the trial court empaneled.[1] The *1119 trial court provided instructions to the new jury, which as the majority asserts, "left no chance, as there was in Thomas' first trial, that the jury could have answered yes if they thought an accomplice, rather that Thomas, committed the aggravating circumstances." Majority at 1112. However, in the new trial on aggravating circumstances, the jury was instructed that Thomas had already "been convicted of the crime of murder in the first degree" and was not permitted to consider whether Thomas personally had the intent to murder or whether Thomas was a major participant.[2] Clerk's Papers (CP) at 179 (Jury Instruction 1); see also CP at 181 (Jury Instruction 2). Consequently, the same problem this court confronted in Thomas I remains.
¶ 42 When the trial court instructed the new jury that Thomas had already been convicted of murder in the first degree, the instructions did not explain to jurors that it was possible the previous jury had convicted Thomas on an accomplice theory.[3] Nonetheless, the majority states the "instructions at Thomas' resentencing proceeding did not require the jury to accept as given that he personally committed the murder...." Majority at 1112. This is flatly contradicted by the plain language of the instructions themselves. The jury was instructed that Thomas was found guilty of premeditated murder in the first degree. CP at 179, 181 (Jury Instructions 1, 2). The jury was then asked the following questions on the special verdict form:
(1) Did the defendant commit the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime?
....
(2) Did the defendant commit the murder in the course of, in furtherance of, or in immediate flight from robbery in the first degree?
....
(3) Did the defendant commit the murder in the course of, in furtherance of, or in immediate flight from robbery in the second degree?
....
(4) Did the defendant commit the murder in the course of, in furtherance of, or in *1120 immediate flight from residential burglary?....
CP at 202 (special verdict form).
¶ 43 The questions presented to the jury repeatedly state Thomas committed the murder and only asked jurors if it was done in connection with another crime. Thus, the trial court replicated the original error by limiting its instruction to the statement that Thomas had already been convicted of the murder without giving the jury the option of determining whether he had the requisite intent or if he was a major participant.
¶ 44 As per this court's original remand, Thomas is entitled to have the jury determine the full question of whether the aggravating factors apply to him personally, which requires them to find both that Thomas was either the perpetrator or a major participant and that Thomas personally committed the aggravating acts. This, after all, is what this court asked the trial court to do in Thomas I, when we held the "jury instruction and the aggravating factors special verdict form given in his case did not require the jury to find that Thomas in particular had the intent to murder [the victim] or that the aggravating factors specifically applied to him as opposed to his accomplice.... These facts must be found by the jury." Thomas I, 150 Wash.2d at 876, 83 P.3d 970.
¶ 45 Thus, I dissent from the majority's affirmation of the new jury's finding that the aggravating factors applied to Thomas; I would instead remand to the trial court to empanel a jury to actually determine both questions.

III. It is not "race-neutral" to strike the sole African-American from a jury pool because that juror expressed concerns about the minority representation in the venire
¶ 46 As the majority notes, during voir dire juror 33 stated, "`I mean, I look at this jury pool. Look at that. Is this really a makeup of Tacoma or Pierce County? This is bizarre, man.... You have more dark in the bailiff than we have in this jury pool, and that's the way the prosecutors want it.'" Majority at 1115 (quoting Verbatim Report of Proceedings (RP) (Oct. 27, 2005) at 4). The juror made no other comments about the State, and the prosecution asked no questions to have the juror clarify these remarks. Id. Juror 33 was the sole African-American in the pool. The prosecution characterized this exchange as being "clearly hostile toward the State." 7 RP at 120. The trial court denied Thomas' challenge to the removal of the juror under Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). 7 RP at 122. At the hearing on the Batson issue, the prosecutor and the trial court made the following statements:
[Mr. Benton, prosecutor:]
Juror No. 33 observed the lack of what he believed was racial cross representation... because there was, at least in his view, there weren't very many representatives of his race. It was the comment after that, the rather forceful comment, that was made that "the prosecution would like it that way," and his comments during that  those few moments that he was speaking, clearly was hostile toward the State, a clear indication that the State had somehow brought this particular group of people together with a lack of minority representation.... [G]iven the demonstrated hostility that I think the Court had observed and that sort of force with which this was made ... the State felt that that juror could not give the State a fair trial.
Id. at 120-21.[4]
The Court: Well, I heard the statements made by Juror No. 33....

*1121 ....
The Court:  and I was alerted to his strong conviction or strong thought about the issue of race being an issue in this case, and I say that because he used words like "this is a joke," he referred to this  the system as being a joke because he was the only African American on the venire, I think. And that, to me, indicated that he was very much  he had already made up his mind as to how he felt about the system and how unfair it is, and I don't think that from what he was saying that he could be fair to one side, for sure towards the State if he feels that bad about it.
I'm reading, "The State's exercise of a single peremptory challenge to remove one black juror is not prima facie evidence of purposeful discrimination as it does not establish a pattern of exclusion. And as such circumstances, the State is not required to give a neutral explanation to the challenge," State v. Ashcraft. The Batson challenge is denied.
What's next?
7 RP at 121-22 (trial court ruling on Batson challenge).[5]
¶ 47 In Batson the United States Supreme Court declared, "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." 476 U.S. at 86, 106 S.Ct. 1712. Batson outlines a three-part process to determine whether a prosecutor has excluded a juror based on race. First, the challenger must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Id. at 93-94, 106 S.Ct. 1712. Second, "the burden shifts to the State to come forward with a neutral explanation for challenging" the juror. Id. at 97, 106 S.Ct. 1712. Third, "[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination."[6]Id. at 98, 106 S.Ct. 1712.
¶ 48 Trial courts are not required to find a prima facie case based on the dismissal of the only venire person from a constitutionally cognizable group, but they may, in their discretion, recognize a prima facie case in such instances. State v. Hicks, 163 Wash.2d 477, 490, 181 P.3d 831, cert. denied, ___ U.S. ___, 129 S.Ct. 278, 172 L.Ed.2d 205 (2008). The Batson Court noted that "`a consistent pattern of official racial discrimination' is not `a necessary predicate to a violation of the Equal Protection Clause,'" and that "`[a] single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" 476 U.S. at 95, 106 S.Ct. 1712 (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). The Court further declared that "[f]or evidentiary requirements to dictate that `several must suffer discrimination' before one could object would be inconsistent with the promise *1122 of equal protection to all." Id. at 95-96, 106 S.Ct. 1712 (quoting McCray v. New York, 461 U.S. 961, 965, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (Marshall, J., dissenting from denial of certiorari)).
¶ 49 The statement juror 33 made that the prosecution found objectionable was a comment about the racial composition of the jury pool. The trial court believed it did not have to decide if the prosecution's reason for striking the juror was "race-neutral," because no pattern of discrimination could be established. That is the wrong standard, as in fact a single instance can be discriminatory. See Batson, 476 U.S. at 95, 106 S.Ct. 1712; Hicks, 163 Wash.2d at 490, 181 P.3d 831. Further, the trial court made that decision despite the fact that the prosecution never asked one follow-up question regarding the juror's opinion. I note that "`[t]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.'" Miller-El v. Dretke, 545 U.S. 231, 246, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (quoting Ex parte Travis, 776 So.2d 874, 881 (Ala.2000)).
¶ 50 African-Americans were historically excluded from serving on juries, and minority underrepresentation on juries has been the subject of considerable political and legal discussion. Apparently, in the majority's view, the lesson for any prospective minority juror in the state of Washington is to be sure not to mention this fact. The majority seems to agree it is "race-neutral" to exclude the sole African-American juror in a venire because that juror mentioned race. This is not only paradoxical but untenable.
¶ 51 I dissent.
WE CONCUR: STEPHENS, J.
NOTES
[1] A complete recitation of the facts can be found at Thomas I, 150 Wash.2d at 831-40, 83 P.3d 970.
[2] The State's theory during Thomas's original trial was that he either shot the victim, Richard Geist, himself, or that Thomas was an accomplice to Geist's murder.
[3] Proof of aggravating factors is the mechanism through which the State may obtain an enhanced sentence for defendants found guilty of first degree murder. RCW 10.95.020.
[4] Apprendi held that under the Sixth Amendment to the United States Constitution, all factors enhancing a sentence beyond the statutory maximum must be found by a jury beyond a reasonable doubt and cannot be determined solely on the findings of a judge. 530 U.S. at 489, 120 S.Ct. 2348. Since our decision in Thomas I, the United States Supreme Court has held that Apprendi errors can be harmless. Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).
[5] It remains an open question whether the State is required to prove the aggravating factors specifically apply to a defendant convicted as an accomplice when it is seeking life without the possibility of parole instead of the death penalty. Thomas, 140 Wash.App. 1014, 2007 WL 2379653, at *6 (Wash.Ct.App. Aug. 21, 2007) ("Neither the Roberts court nor any other has held that RCW 10.95.020 requires that a defendant personally commit the aggravating circumstances when the State seeks a punishment of life without parole."); but see In re Howerton, 109 Wash.App. 494, 501, 36 P.3d 565, 569 (2001) ("[A] defendant's culpability for an aggravating factor cannot be premised solely upon accomplice liability for the underlying substantive crime absent explicit evidence of the Legislature's intent to create strict liability. Instead, any such sentence enhancement must depend on the defendant's own misconduct.") (citing State v. McKim, 98 Wash.2d 111, 117, 653 P.2d 1040 (1982) (holding that the accomplice liability statute's strict liability for the substantive crime was not intended by the legislature to apply to sentence enhancements that must instead be based on "the accused's own misconduct")). Because the State proved all four factors specifically applied to Thomas, the question is not squarely before this court.
[6] "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." CONST. art. IV, § 16.
[7] Furthermore, the reasoning in Hughes does not apply. The court in Hughes noted that to empanel a jury to make factual findings when RCW 9.94A.535 "explicitly directs the trial court" to make them "would be contrary to the explicit language of the statute." 154 Wash.2d at 149, 110 P.3d 192. Unlike RCW 9.94A.535, RCW 10.95.020 does not provide that the sentencing judge is to determine the presence of aggravating factors.
[8] Petitioner points to earlier problems in the history of the death penalty statute to support his argument that "the State may not constitutionally seek life imprisonment without possibility of release or parole for those who are found guilty of aggravated first degree murder." State v. Frampton, 95 Wash.2d 469, 484, 627 P.2d 922 (1981). Language in Frampton must be understood in the context of that case and limited as such. The State in Frampton attempted to secure a sentence of life without parole for a defendant whose death sentence was held unconstitutional under State v. Martin, 94 Wash.2d 1, 8, 614 P.2d 164 (1980). The State argued that while the application of the death penalty was unconstitutional, because the judge and not the jury found the aggravating factors, a sentence of life without parole remained constitutionally sound. The way the statute was then written, the court held, made "[a]ll of the jury sentencing procedures, including life without the possibility of parole, ... predicated on the filing of a notice of intention to request the death penalty," as such, "if the death penalty scheme is unconstitutional... the question of life imprisonment without possibility of parole may not be considered." Frampton, 95 Wash.2d at 480-81, 627 P.2d 922. The statute at issue in Frampton, chapter 10.94 RCW, was repealed in 1981. RCW 10.04.010 to 10.94.900, repealed by Laws of 1981, ch. 138, § 24 (effective May 14, 1981).
[1] At the new trial, the prosecution chose not to seek the death penalty. See State v. Thomas, No. 34339-8-II, slip op. at 4, 140 Wash.App. 1014, 2007 WL 2379653, at *2 (Wash.Ct.App. Aug.21, 2007).
[2] Part of the trial court's confusion may be due to this court's statement in Thomas I that it agreed Thomas "`was so entrenched as a major participant in the murder that his culpability cannot be lessened even if his accomplice pulled the trigger.'" Thomas I, 150 Wash.2d at 846, 83 P.3d 970 (quoting Br. of Resp't at 133). This passage is from the court's harmless error analysis regarding its affirmation of Thomas' underlying conviction for first degree premeditated murder. But to find whether aggravating factors have been proved where accomplice liability was charged, a jury must expressly find either major participation or premeditated intent and that the aggravating factors specifically apply to the defendant. Id. at 842, 83 P.3d 970. So the majority in Thomas I concluded that for the purposes of aggravating factors, Thomas' participation must be treated as not settled and sent to a jury because of the requirement that a jury expressly find Thomas was a principal or major participant. Thus, whether Thomas was a major participant or a principal, rather than an accomplice, was rendered reminiscent of Schrödinger's cat, the famous thought experiment; it was simultaneously "proved" and "not-proved." See id. at 842-45, 849, 83 P.3d 970.

This conundrum was created in part by a harmless error analysis that permits the court to insert its own opinions about the evidence and to base its decisions on its own speculations as to the inner workings of the minds of an improperly instructed jury. The confusion is compounded by the situation here, where the court affirmed a conviction but remanded the aggravated sentence, though both are based on the same set of facts. See State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946) ("[I]t is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors.").
[3] The trial court informed the jury that Thomas had been convicted of premeditated murder in the first degree in 2 of 22 jury instructions. "The defendant has been found guilty of premeditated murder in the first degree." CP at 181 (Jury Instruction 2); see also CP at 179 (Jury Instruction 1). The trial court did not inform the jury that the prior conviction may have been based on an accomplice theory in any of the 22 instructions. The majority notes Thomas' counsel argued in closing that Thomas may not have shot the victim. Majority at 1112 (referencing 15 RP at 1643-44). However, the fact that an argument was presented at closing does not address the issue of whether jurors were properly permitted to consider the specific facts this court remanded for them to expressly find. Here, they were not. The jury instructions and the special verdict form did not allow the jury to entertain the possibility that Thomas may not have been a major participant, so defense counsel's argument at closing is irrelevant.
[4] As evidenced by the exchange, the prosecutor ironically based his argument to strike the lone African-American juror on the juror's statement regarding minority representation in the jury pool. According to the record of voir dire, this was the entire interaction on this issue:

Excerpt No. 3
Mr. Thornton: But you agree that there's some sort of, when you walk in, human nature that we make a judgment?
Juror No. 2: Yes, I do.
Mr. Thornton: No. 33?
Juror No. 33: I think that's a stupid statement. I mean, Ted Bundy, did he look guilty? Jeffrey Dahmer, next-door neighbor, did he look guilty or act guilty? That's more of a racist statement than anything else. I mean, look at this jury pool. Look at that. Is this really a makeup of Tacoma or Pierce County? This is bizarre, man.
Mr. Thornton: You agree with that statement?
Juror No. 33: You have more dark in the bailiff than we have in this jury pool, and that's the way the prosecutors want it.
Mr. Thornton: That is troubling. Doesn't seem like there's a cross-section.
(Excerpt No. 3 completed.)
RP (Oct. 27, 2005) at 3-4. There is no indication in the record that the prosecutor asked juror 33 any questions regarding the above exchange or the issue of minority representation in the jury pool in general. Without any inquiry by the State or the trial court, it would be reasonable for juror 33 to conclude that he was initially correct when he said "that's the way the prosecutors want it." Id.
[5] Contrary to the trial judge's statement, the phrase "this is a joke" does not appear in the record of the exchange with juror 33.
[6] The majority states, "the trial court heard the State's reasons for striking the juror and found them to be race-neutral." Majority at 1115. As indicated by the full quotation of the trial court's ruling, supra, the judge did not find the State's reason to be race-neutral, but rather concluded he did not have to reach the issue of race-neutrality. The majority seems to recognize, "the court was mistaken as to the standard for establishing a prima facie case of discrimination," yet inexplicably asserts the application of that incorrect standard was "a correct application of the law." Id.