[No. 64012-7-I.   Division One.   December 5, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. SERGIO
REYES-BROOKS, *Appellant*.

194

*Sergio Reyes-Brooks*, pro se.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Jeffrey C. Dernbach, Deputy*, for respondent.

¶1 LEACH, J. — Sergio Reyes-Brooks appeals his conviction for first-degree murder and unlawful possession of a firearm. He contends the trial court erred by instructing the jury that it must be unanimous to answer "no" to the special verdict form for a firearm sentence enhancement. Reyes-Brooks also challenges his sentence, as a persistent offender, to life imprisonment without the possibility of parole. He claims the trial court violated his rights to a jury trial, equal protection, and due process when it determined the existence of his two prior strike convictions by a preponderance of the evidence. Because the trial court erred in instructing the jury on the unanimity requirement for a special verdict, we vacate the firearms sentence enhancement. We otherwise affirm his conviction and sentence and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The charges in this case arose from an incident in 2006. Reyes-Brooks and Ray Porter were upset with Dominque McCray. They and Porter's girl friend, Crystal Moore, drove McCray to a secluded dead-end street, where

they forced McCray to strip naked at gunpoint. McCray tried to flee, but Porter shot him once in the back and once in the head with a .380 Grendel semiautomatic handgun. Reyes-Brooks then exited the car, walked over to McCray, and fired a single shot into the back of his head with a .357 revolver. Police found McCray's body lying in the middle of the street. They also found two .380 shell casings and a bullet fragment at the scene.

¶3 Later that night, King County sheriff's deputies responded to a shooting at a party attended by Reyes-Brooks, Porter, and Moore. As officers began to separate the people at the party and take witness statements, Porter shot and killed a deputy. Then he shot and killed himself. Deputies recovered a .380 handgun at the scene of Porter's death. Ballistics testing confirmed that a bullet recovered from McCray was fired from this same gun.

¶4 When deputies questioned Moore, she told them about McCray's murder. Deputies impounded Reyes-Brooks's car and found a .357 revolver under the driver's seat. Ballistics testing confirmed that the shot into the back of McCray's head came from this gun. The handle, hammer, and trigger area of the gun contained DNA (deoxyribonucleic acid) matching that of three people, including Reyes-Brooks, and DNA from small drop of blood found on it matched McCray's DNA. Police also found shoes at Reyes-Brooks's home stained with blood in a high velocity impact spatter. DNA tests showed that the blood matched McCray's.

¶5 The State charged Reyes-Brooks with one count of first-degree murder with a firearm enhancement and one count of unlawful possession of a firearm. A jury returned guilty verdicts on the first-degree murder and unlawful possession charges. In addition, the jury answered "yes" on a special verdict for a firearm enhancement.

¶6 Reyes-Brooks stipulated that he had previously been convicted of serious offenses. The court sentenced him as a persistent offender to life imprisonment without the possi-

bility of parole. The court based its sentence on two prior convictions: a 1998 conviction for first-degree robbery and a 2003 conviction for first-degree burglary.

¶7  Reyes-Brooks appeals.

## ANALYSIS

*Special Verdict*

■ ¶8  The court instructed the jury that all 12 must agree in order to answer the question on the special verdict form for the firearm enhancement. Instruction 24 stated,

> If you find the defendant guilty of either murder in the first degree or murder in the second degree, you will then use the special verdict form and fill in the blank with the answer "yes" or "no" according to the decision you reach. *Because this is a criminal case, all twelve of you must agree in order to answer the special verdict form.* In order to answer the special verdict form "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you unanimously have a reasonable doubt as to this question, you must answer "no."

(Emphasis added.) Reyes-Brooks challenges this instruction for the first time on appeal. We review de novo his claimed error of law in this jury instruction.[1]

■ ¶9  In *State v. Bashaw*,[2] our Supreme Court decided that a nearly identical instruction misstated the law. In that case, the State charged the defendant with three counts of unlawfully delivering a controlled substance.[3] Because the State sought sentence enhancements, the court instructed the jury to decide whether each offense occurred

---

[1] *State v. Sublett*, 156 Wn. App. 160, 183, 231 P.3d 231, *review granted*, 170 Wn.2d 1016, 245 P.3d 775 (2010).

[2] 169 Wn.2d 133, 147, 234 P.3d 195 (2010).

[3] *Bashaw*, 169 Wn.2d at 137.

within 1,000 feet of a school bus route stop.[4] The special verdict form directed the jury, " *'Since this is a criminal case, all twelve of you must agree on the answer to the special verdict.'* "[5] Our Supreme Court held that this instruction stated the law incorrectly, vacated the sentencing enhancement, and remanded for proceedings consistent with its opinion.[6] The court reasoned,

> Though unanimity is required to find the *presence* of a special finding increasing the maximum penalty, it is not required to find the *absence* of such a special finding. The jury instruction here stated that unanimity was required for either determination. That was error.[7]

¶10 A panel from this court also addressed this issue in *State v. Ryan.*[8] The special verdict instruction there stated, " 'Because this is a criminal case, all twelve of you must agree in order to answer the special verdict forms.' "[9] Citing *Bashaw*, this court observed,

> The State's burden is to prove to the jury beyond a reasonable doubt that its allegations are established. If the jury cannot unanimously agree that the State has done so, the State has necessarily failed in its burden. To require the jury to be unanimous about the negative—to be unanimous that the State has not met its burden—is to leave the jury without a way to express a reasonable doubt on the part of some jurors.[10]

We therefore find under *Bashaw* and *Ryan* that the special verdict instruction misstated the law.

---

[4] *Bashaw*, 169 Wn.2d at 139.

[5] *Bashaw*, 169 Wn.2d at 139 (emphasis added).

[6] *Bashaw*, 169 Wn.2d at 148.

[7] *Bashaw*, 169 Wn.2d at 147 (citation omitted).

[8] 160 Wn. App. 944, 252 P.3d 895, *review granted*, 172 Wn.2d 1004, 258 P.3d 676 (2011).

[9] *Ryan*, 160 Wn. App. at 947.

[10] *Ryan*, 160 Wn. App. at 947 (footnote omitted).

¶11 In response, the State contends that Reyes-Brooks waived the issue by failing to object to the instruction below. While a failure to timely object generally waives the claim on appeal, an appellant may raise for the first time on appeal a manifest error affecting a constitutional right.[11]

¶12 Two panels of this division and one panel of Division Three have considered whether this claim of error may be raised for the first time on appeal, and our Supreme Court has accepted review in two of these cases reaching opposite results.[12] Two members of this panel adhere to the view expressed in *Ryan* that *Bashaw* requires reversal of the sentence, even if Reyes-Brooks did not raise the issue below.

¶13 The State next urges us to find any instructional error harmless beyond a reasonable doubt because the jury necessarily decided the issue when it found Reyes-Brooks guilty on count II, unlawful possession of a firearm. However, our Supreme Court's decisions in *Bashaw* and *State v. Williams-Walker*[13] and our recent decision in *State v. Campbell*[14] undermine the State's position.

¶14 Instructional error is harmless when " 'beyond a reasonable doubt' " the jury verdict " 'would have been the same absent the error.' "[15] In *Bashaw*, the court observed that jurors with reservations deliberating under the strict una-

---

[11] RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

[12] *Ryan*, 160 Wn. App. at 948-49 (the error is of constitutional magnitude, not harmless, and can be raised for the first time on appeal); *State v. Morgan*, 163 Wn. App. 341, 351-53, 261 P.3d 167 (2011) (the error is not of constitutional magnitude and cannot be raised for the first time on appeal), *petition for review filed*, No 86555-8 (Wash. Oct. 3, 2011); *State v. Guzman Nunez*, 160 Wn. App. 150, 153-54, 165, 248 P.3d 103 (the error is not of constitutional magnitude and cannot be raised for the first time on appeal), *review granted*, 172 Wn.2d 1004, 258 P.3d 676 (2011).

[13] 167 Wn.2d 889, 225 P.3d 913 (2010).

[14] 163 Wn. App. 394, 260 P.3d 235 (2011), *petition for review filed*, No. 86593-1 (Wash. Oct. 12, 2011).

[15] *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

nimity requirement "might not hold to their positions or may not raise additional questions that would lead to a different result."[16] And the court found it impossible to determine with confidence what might have occurred had a proper instruction been given: "the flawed deliberative process tells us little about what result the jury would have reached had it been given a correct instruction."[17] For that reason, the court determined that the error was not harmless.[18]

¶15 In *Williams-Walker*, the court considered harmless error claims in a group of consolidated cases in which the trial court imposed a five-year firearm sentence enhancement after a jury found by special verdict that the defendant was armed with a deadly weapon. In two of the cases, the jury convicted the defendant of underlying crimes that included use or possession of a firearm as an element.[19] Because no dispute existed that the deadly weapon was a firearm,[20] the State contended that any error in a special verdict form asking the jury if the defendant was armed with a deadly weapon during the commission of the crime, instead of asking if he was armed with a firearm, was harmless.[21]

¶16 Relying on *Blakely v. Washington*[22] and *Apprendi v. New Jersey*,[23] our Supreme Court reversed the sentences.[24] The court stated that when the trial court imposes an

---

[16] *Bashaw*, 169 Wn.2d at 147-48.

[17] *Bashaw*, 169 Wn.2d at 147.

[18] *Bashaw*, 169 Wn.2d at 148.

[19] *Williams-Walker*, 167 Wn.2d at 893-94.

[20] Under the applicable statutes, a deadly weapon special verdict authorizes a two-year enhancement, while a firearm special verdict authorizes a five-year enhancement. *Williams-Walker*, 167 Wn.2d at 897-98.

[21] *Williams-Walker*, 167 Wn.2d at 900-02.

[22] 542 U.S. 296, 124 S. Ct. 2531,159 L. Ed. 2d 403 (2004).

[23] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[24] *Williams-Walker*, 167 Wn.2d at 899.

enhanced sentence based on an underlying guilty verdict instead of the jury's special verdict, this results in a sentence unsupported by the jury's findings.[25] This violates both statutory requirements and a defendant's constitutional right to a jury trial under article I, sections 21 and 22 of the Washington Constitution.[26] Thus, the court concluded that when a trial court imposes an enhanced sentence not supported by facts found by the jury with its special verdict, the resulting error can never be harmless.[27]

¶17 In *Campbell*, this court applied the logic of *Bashaw* and *Williams-Walker* to conclude that when a jury is instructed that it must be unanimous in order to answer "no" to a special verdict question, that error can never be harmless.[28] Following *Campbell*, we hold that the court's instructional error was not harmless.

■ ¶18 This result requires that we address the appropriate remedy.[29] In *Bashaw*, our Supreme Court did not decide this question. Instead, it reversed the sentence enhancement and remanded the case for further proceedings consistent with the court's opinion. We hold that where a *Bashaw* instructional error compels vacation of an exceptional sentence, the trial court may impanel a jury upon remand to consider the aggravating factor with proper instructions.

¶19 Several considerations lead us to this conclusion. First, instructional error on aggravating factors at an original proceeding has not prevented the State from again

---

[25] *Williams-Walker*, 167 Wn.2d at 899.

[26] *Williams-Walker*, 167 Wn.2d at 899-900.

[27] *Williams-Walker*, 167 Wn.2d at 902.

[28] *Campbell*, 163 Wn. App. at 406.

[29] We recognize that our resolution of the persistent offender issue may cause the State to abandon this issue on remand.

seeking an exceptional sentence at resentencing.[30] In *State v. Thomas*,[31] our Supreme Court reversed a death penalty sentence due to error in instructions given to the jury on the aggravating factors. There, the court remanded for "a new trial on the aggravating factors or resentencing in accordance with this opinion."[32] Following this directive, the trial court impaneled a jury, which found four aggravating factors. The court then sentenced Thomas to life without parole.[33] Thomas again appealed his sentence, claiming that the trial court had no power to impanel a jury because chapter 10.95 RCW (the death penalty statutes) provided no mechanism by which a trial court could impanel a jury solely to consider the existence of aggravating factors.[34] But relying on court rules[35] and the constitutional right to a jury trial,[36] the court held that the trial court properly impaneled a jury for Thomas's resentencing and affirmed the sentence.[37]

¶20 *Thomas II*[38] strongly informs our conclusion here as it signals that no constitutional concerns impede retrial following vacation of an exceptional sentence based on

---

[30] We could find no cases where an instructional error alone barred the State from electing to retry a defendant.

[31] 150 Wn.2d 821, 850, 83 P.3d 970 (2004) (*Thomas* I).

[32] *Thomas* I, 150 Wn.2d at 876.

[33] *State v. Thomas*, 166 Wn.2d 380, 385, 208 P.3d 1107 (2009) (*Thomas* II).

[34] *Thomas* II, 166 Wn.2d at 392. Thomas also challenged retrial on aggravating factors based on double jeopardy grounds. The court quickly rejected that argument, holding that reversal of aggravating factors for instructional error (not insufficiency of the evidence) and remand for further proceedings was not a final disposition of the case and double jeopardy protections had not attached. 166 Wn.2d at 394-95.

[35] *See* CrR 6.1(a); CrR 6.16(b).

[36] *See* U.S. Const. art. III, § 2, cl. 3 & amend. VI; Wash. Const. art. I, § 21; *Blakely*, 542 U.S. at 301.

[37] *Thomas* II, 166 Wn.2d at 394, 398.

[38] *State v. Thomas*, 166 Wn.2d 380, 385, 208 P.3d 1107 (2009).

instructional error.[39] And although the instructional error in *Thomas* I differed from a *Bashaw* instructional error, *Thomas* II compels the same result with regard to the State's ability to pursue an exceptional sentence on remand.

¶21 Second, we draw additional support for our conclusion from case law and legislative amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, following the United States Supreme Court decision in *Blakely*. *Blakely* required the reversal of an exceptional sentence when a judge, rather than a jury, found the facts for aggravating factors used to support the exceptional sentence.[40] Upon remand, however, the resentencing court's authority to impanel a jury (and comply with *Blakely*) could not be derived from then existing sentencing statutes because the statutes still directed the *trial court* to make the requisite factual findings to support the imposition of an exceptional sentence.[41] Moreover, the resentencing court possessed no inherent authority to impanel a jury to consider facts supporting allegations of aggravating factors at resentencing.[42] Thus, an offender could be sentenced only

---

[39] *See also State v. Powell*, 167 Wn.2d 672, 677, 688, 223 P.3d 493 (2009) (rejecting a notice and double jeopardy challenge to retrial on aggravating factors and holding that a trial court was permitted to impanel a jury to consider aggravating circumstances imposed in a previous sentence and then vacated under *Blakely*).

[40] *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490).

[41] *See In re Pers. Restraint of Beito*, 167 Wn.2d 497, 507-08, 220 P.3d 489 (2009); *In re Pers. Restraint of Hall*, 163 Wn.2d 346, 351-52, 181 P.3d 799 (2008).

[42] *State v. Hughes*, 154 Wn.2d 118, 149-52, 110 P.3d 192 (2005). The *Hughes* court explicitly pointed to the absence of a procedure crafted by the legislature to allow juries to be convened solely for the purpose of deciding an aggravating factor either after conviction of the underlying offense or on remand after an appeal. Further, the court itself refused to "create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure .... To create such a procedure out of whole cloth would be to usurp the power of the legislature." *Hughes*, 154 Wn.2d at 151-52.

within the standard range because no jury could consider the aggravating factors on remand.[43]

¶22 In response to *Blakely*, the legislature amended the SRA by adding former RCW 9.94A.537 (2005), which allowed a jury to decide whether aggravating factors existed.[44] Following our state Supreme Court's decision in *State v. Pillatos*,[45] the legislature amended RCW 9.94A.537(2) in 2007[46] to allow trial courts to impanel juries for resentencing in cases that had been previously decided. It provides,

> In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.

The legislature also amended RCW 9.94A.537(4) in 2007[47] to specifically provide that a jury other than the one impaneled for the original trial may consider an aggravating circumstance at resentencing:

> Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall be presented to the jury during the trial of the alleged crime, *unless the jury has been impaneled solely for resentencing*, or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3) (e)(iv), (h)(i), (o), or (t).

(Emphasis added.)

---

[43] *Hughes*, 154 Wn.2d at 156.

[44] LAWS OF 2005, ch. 68, § 1. Former RCW 9.94A.537(2) provided that "[t]he facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts." LAWS OF 2005, ch. 68, § 4.

[45] 159 Wn.2d 459, 470-71, 480, 150 P.3d 1130 (2007) (holding that the 2005 amendments did not apply retroactively).

[46] LAWS OF 2007, ch. 205, § 2(2).

[47] LAWS OF 2007, ch. 205, § 2(4).

¶23 We "derive our understanding of the legislature's intent from the plain language before us, especially in matters of criminal sentencing."[48] Plainly, both RCW 9.94A-.537(2) and (4) authorize the resentencing court to impanel a jury to consider the factual basis for the aggravating factors enumerated in RCW 9.94A.535(3). And while the 2005 amendments to the SRA responded to *Blakely*,[49] the following statement, in relevant part, accompanied the 2007 amendments: "The legislature intends that the superior courts shall have the authority to impanel juries to find aggravating circumstances *in all cases* that come before the courts for trial or sentencing, regardless of the date of the original trial or sentencing."[50]

¶24 Here, we rely on the legislature's sweeping use of broad language—"any case"[51] and "all cases"[52]—to support our decision on the remedy on remand for a *Bashaw* error. While the statutes cited apply only to certain aggravating factors, the legislature's statement expresses a guiding public policy applicable to sentence enhancements generally. We therefore hold that when *Bashaw* requires reversal of an exceptional sentence, a resentencing court may impanel a jury to consider the factual basis for aggravating factors.

*Equal Protection*

■ ¶25 Reyes-Brooks challenges the validity of the Persistent Offender Accountability Act (POAA), RCW 9.94A-.570. He notes that when proof of a prior conviction is an

---

[48] *State v. Delgado*, 148 Wn.2d 723, 730, 63 P.3d 792 (2003).

[49] The following statement accompanied the 2005 amendments: "The legislature intends to conform the sentencing reform act, chapter 9.94A RCW, to comply with the ruling in *Blakely v. Washington* . . . . The legislature intends to create a new criminal procedure for imposing greater punishment than the standard range or conditions." LAWS OF 2005, ch. 68, § 1.

[50] LAWS OF 2007, ch. 205, § 1 (emphasis added).

[51] RCW 9.94A.537(2).

[52] LAWS OF 2007, ch. 205, § 1.

element of a crime, the State must prove its existence to a jury beyond a reasonable doubt,[53] but when the same conviction is a sentencing aggravator that elevates a felony to an offense requiring a life sentence without parole, as was the case here, a judge may determine the existence of the prior conviction by a preponderance of the evidence.[54] This, Reyes-Brooks contends, violates the equal protection clause of the Fourteenth Amendment and article I, section 12 of the Washington Constitution because it allows the State to prove the existence of prior convictions to a judge rather than to a jury and by a lower standard of proof.[55]

¶26 Division Three of this court recently rejected a similar claim in *State v. Williams*,[56] concluding that this distinction is rationally related to the purpose of the POAA. We agree and reject Reyes-Brooks's claim.

*Due Process and Right to a Jury Trial*

██ ██ ¶27 Next, Reyes-Brooks argues that under *Apprendi* and *Blakely*, the same aspects of sentencing under the POAA violated his Sixth and Fourteenth Amendment rights to a jury trial and due process of law. Again, we disagree.

¶28 While the State must generally prove every element of an offense charged beyond a reasonable doubt, tradi-

---

[53] *See State v. Roswell*, 165 Wn.2d 186, 189, 192-93, 196 P.3d 705 (2008).

[54] *See State v. Wheeler*, 145 Wn.2d 116, 121, 34 P.3d 799 (2001).

[55] Under the POAA, trial courts are required to sentence "persistent offenders" to life imprisonment without the possibility of parole. RCW 9.94A.570. At the time Reyes-Brooks committed his current offense, a "persistent offender" was a person who had been convicted of a "most serious offense" and, before the commission of the offense, has been convicted as an offender on two separate occasions of most serious offenses. Former RCW 9.94A.030(33)(a) (2006). Pertinent here, a "most serious offense" included any class A felony as well as assault in the second degree. Former 9.94A.030(29) (2006). The procedures described in the SRA equally apply to persistent offender law. *State v. Thorne*, 129 Wn.2d 736, 777-78, 921 P.2d 514 (1996).

[56] 156 Wn. App. 482, 496-98, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011, 245 P.3d 773 (2010).

tional sentencing factors, such as prior criminal history, are not elements of the crime charged.[57] In *Blakely*, the United States Supreme Court held that " ' [o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[58] Further, the Washington Supreme Court "has repeatedly rejected" the argument that due process requires the fact of a prior conviction to be submitted to a jury and proved beyond a reasonable doubt for sentencing purposes.[59] The federal and state constitutions and the POAA allow the trial judge to determine by a preponderance of the evidence the existence of prior convictions used to enhance a sentence.[60]

## *Statement of Additional Grounds*

¶29 In a pro se statement of additional grounds, Reyes-Brooks raises four arguments that he claims require relief from his conviction and sentence. First, he argues ineffective assistance of counsel, but the basis for that claim is unclear. He asserts his attorney was unprepared for trial because of the prosecution's alleged mismanagement of discovery and the difficulty his attorney had in obtaining medical records and other documents with which counsel intended to impeach Moore.

¶30 To prevail on an ineffective assistance of counsel claim, the defendant must show (1) that counsel's representation was deficient and (2) that the deficient

---

[57] *Wheeler*, 145 Wn.2d at 120.

[58] *Blakely*, 542 U.S. at 301 (emphasis added) (quoting *Apprendi*, 530 U.S. at 490).

[59] *State v. Thiefault*, 160 Wn.2d 409, 418, 158 P.3d 580 (2007).

[60] *Wheeler*, 145 Wn.2d at 121.

representation prejudiced him.[61] A failure on either prong is fatal to the defendant's claim.[62]

¶31 Our review of the record persuades us that defense counsel was not ineffective. Citing discovery concerns, defense counsel twice moved to dismiss the charges or, alternatively, for a continuance or mistrial. And after the trial court denied those motions, counsel filed a motion for reconsideration of that decision. Reyes-Brooks claims that this demonstrates his counsel did not have time "to examine all the evidence."

¶32 But Reyes-Brooks fails to establish any resulting prejudice. Ample physical evidence links Reyes-Brooks to the murder. Moore admitted to having been convicted of theft, forgery, and robbery. She also testified that on the night of McCray's death, she used drugs and alcohol and was arrested for assaulting a police officer. In addition, counsel questioned her about an immunity agreement she entered into with the State regarding the events of that evening. Given the abundance of impeachment evidence used by counsel, her credibility was already in question, and any additional impeachment derived from further examination of the late discovery materials would have been redundant.

¶33 Because Reyes-Brooks cannot establish prejudice, he is not entitled to relief.

¶34 Second, Reyes-Brooks claims juror misconduct. He alleges that the court reporter told the parties a relative of the victim was seen talking to a juror. He also claims that upon learning of the contact, the trial judge allegedly stated, "How can this happen? Keep the jury locked away from everyone, this is grounds for automatic mistrial." But the record does not establish these facts or any others sufficient to support a claim of juror misconduct. We,

---

[61] *State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d 512 (1999).

[62] *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

therefore, do not address Reyes-Brooks's argument any further.

¶35 Reyes-Brooks has provided insufficient information for us to identify the basis for his third asserted ground for review.

¶36 Finally, Reyes-Brooks claims that he cannot be guilty of murder because Porter's shots killed McCray, not his. But whether Porter severely wounded McCray or fatally shot him does not matter. A person commits first-degree murder when he or an accomplice acts with premeditated intent to cause the death of another person.[63] The court instructed the jury that to convict Reyes-Brooks of first-degree murder, it had to find that either he or an accomplice killed McCray. Thus, which bullets actually caused McCray's death does not affect Reyes-Brooks's guilt.

## CONCLUSION

¶37 Because of the error in the special verdict instruction, we vacate the special verdict and firearm enhancement. We otherwise affirm Reyes-Brooks's conviction and sentence and remand for further proceedings consistent with this opinion.

LAU, J., concurs.

¶38 DWYER, C.J. (concurring and dissenting) — For the reasons set forth in *State v. Morgan*, 163 Wn. App. 341, 348-53, 261 P.3d 167 (2011), *petition for review filed*, No. 86555-8 (Wash. Oct. 3, 2011), I believe that Reyes-Brooks cannot raise the issue of special verdict instructional error

---

[63] RCW 9A.32.030; RCW 9A.08.020(1)-(3); *State v. Mullin-Coston*, 152 Wn.2d 107, 112, 95 P.3d 321 (2004).

for the first time on appeal. Accordingly, I dissent from the majority's holding to the contrary.

¶39  In all other respects, I join in the majority opinion.

Peitition for review granted and case remanded to the Court of Appeals at 175 Wn.2d 1018 (2012).