FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 16

STATE OF WASHINGTON

BY_____
DEPUTY



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42509-2-II |
| Respondent | |
| v. | |
| MAUA SIAMUPENI MUASAU, | Consolidated with: |
| Appellant | |
| STATE OF WASHINGTON, | No. 42522-0-II |
| Respondent, | |
| v. | |
| DAMOS L. HANDSOM, | Consolidated with: |
| Appellant. | |
| STATE OF WASHINGTON, | No. 42708-7-II |
| Respondent, | |
| v. | |
| MICHAEL ANTONIO SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — A jury found Maua Siamupeni Muasau, Damos L. Handsom, and Michael Antonio Smith guilty of first degree burglary. It also found Muasau guilty of felony harassment and fourth degree assault. In this consolidated appeal, we hold that (1) the trial court

did not violate Smith's CrR 3.3 time for trial rights, (2) sufficient evidence supports Handsom's and Muasau's first degree burglary convictions and Muasau's felony harassment and fourth degree assault convictions, and (3) Smith and Muasau's ineffective assistance of counsel claims fail. Smith also filed a statement of additional grounds (SAG), claiming additional CrR 3.3 violations, contesting witness credibility, and claiming jury instruction errors, jury trial violations, and ineffective assistance. Because we find no reversible error, we affirm.

## FACTS

Bill Edmiston; his girlfriend, Lois Hopkins; and Hopkins's cousin, Rusty Parrott lived together in Parrott's trailer. Hopkins's son, Cody Davis, also temporarily lived there until Parrott ordered him to move out. When Davis moved, he left no personal belongings in Parrott's trailer.

In August 2010, shortly after Davis moved out of Parrott's trailer, Davis, Handsom, Muasau, and Smith returned and started banging on the trailer doors. Davis said he wanted to collect his things, though he had nothing in the home. Edmiston and Parrott refused to allow the men inside; but the men kicked in the doors to gain entry. Handsom and Smith wore black masks covering their faces, and Handsom wore a military-style ballistic flak vest; Handsom also carried an AK-47 assault rifle while Smith carried a .380 pistol. The men believed that Davis's father had hidden gold bars for Davis in the trailer.

When Parrott attempted to phone 911, Muasau took the phone and smashed it against the wall. The men then ordered Edmiston and Parrott onto their hands and knees at gunpoint, and Muasau told the other men to "[s]moke 'em." 3 Verbatim Report of Proceedings (VRP) at 225. Davis, however, intervened and said not to kill his cousin. Then, Muasau and Davis demolished

2

Davis's former bedroom but found nothing. Before leaving, Muasau hit Parrott in the right cheek with his fist. Edmiston was also hit twice with something metal that Parrott believed was the butt of Smith's pistol.

Minutes after the intruders left Parrott's trailer, Lakewood police contacted them in their vehicle. Smith was carrying a set of brass knuckles, and officers found the AK-47 assault rifle, the .380 pistol, and ammunition.

The State charged Handsom, Muasau, and Smith with numerous crimes relating to these events and the State tried them in a consolidated trial.[1] On September 16, 2010, the trial court granted Smith's defense counsel's continuance motion, noting, "Defense counsel has been on a pre-planned vacation[,] this is a 3rd strike, several co-defendant case & counsel needs more time to prepare/negotiate/ & investigate." Clerk's Papers (CP) at 267. The trial court also indicated that it granted the continuance motion upon the parties' agreement pursuant to CrR 3.3(f)(1). But Smith's counsel told the trial court that Smith refused to sign the continuance order.

A jury found Handsom, Smith, and Muasau guilty of first degree burglary with a deadly weapon enhancement because at least one of them was armed during the burglary. The jury also found Muasau guilty of felony harassment and fourth degree assault.[2] The trial court then sentenced each of the defendants, and the trial court found that Smith fell within Washington's

---

[1] Davis pleaded guilty.

[2] The jury acquitted Smith of fourth degree assault.

persistent offender statute[3] and sentenced him to life in prison without the possibility of parole.

Handsom, Smith, and Muasau now each raise claims on appeal.

ANALYSIS

I. CrR 3.3 TIME FOR TRIAL

Smith argues that the trial court violated his CrR 3.3[4] time for trial right when it entered

its September 16, 2010 order continuing his trial because Smith had not signed the continuance

order. We disagree because the court granted the continuance in the interest of justice.

A. Standard of Review and Rules of Law

The decision to grant or deny a continuance motion rests with the sound discretion of the

trial court. *State v. Ollivier*, No. 86633-3, slip. op. at 5 (Wash. Oct. 31, 2013). A trial court

abuses its discretion if its decision is based on untenable grounds or is made for untenable

reasons. *State v. Andrews*, 66 Wn. App. 804, 810, 832 P.2d 1373 (1992), *review denied*, 120

Wn.2d 1022 (1993). It is not a manifest abuse of discretion for a court to grant a continuance to

allow defense counsel more time to prepare for trial, even over defendant's objection, to ensure

effective representation and a fair trial. *See State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929

(1984), *cert. denied*, 471 U.S. 1094 (1985).

An in-custody defendant must be tried within 60 days after the "commencement date,"

typically the arraignment date. CrR 3.3(b)(1). Periods of time excluded from this 60-day limit

include those required by the administration of justice so long as the continuance will not

---

[3] RCW 9.94A.570.

[4] CrR 3.3 time for trial rights may be distinguished from the constitutional speedy trial right.

4

prejudice the defendant. CrR 3.3(e)(3), (f)(2). Under CrR 3.3(f)(1), trial courts may grant

continuances "[u]pon written agreement of the parties, which must be signed by the defendant."

## B. Analysis

Here, 38 days into Smith's 60-day trial period, Smith's counsel sought a continuance

because she needed additional time to investigate and to prepare for trial. Smith opposed the

continuance and refused to sign the order continuing trial.

The trial court granted the continuance request because "[d]efense counsel has been on a

pre-planned vacation[,] this is a 3rd strike, several co-defendant case & counsel needs more time

to prepare/negotiate/ & investigate." CP at 267. The order also indicates that (1) the

continuance was based on the parties' agreement but (2) that one party refused to sign and voiced

an objection. This inconsistency appears to be a scrivener's error or clerical mistake.[5] Had the

trial court intended to enter the order based on the parties' written agreement, it would have

needed Smith's signature. CrR 3.3(f)(1). And here, the trial court knew that Smith refused to

sign.

Based on the trial court's articulated rationale, we conclude that it intended to grant the

continuance to promote the administration of justice under CrR 3.3(f)(2). Accordingly, the trial

court did not violate Smith's time for trial right because it granted the continuance in the

---

[5] A clerical mistake is one that, when amended, would correctly convey the intention of the court based on other evidence. *State v. Priest*, 100 Wn. App. 451, 456, 997 P.2d 452 (2000). A court may correct a clerical mistake or scrivener's error at any time. *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011).

administration of justice and its notation that the continuance was by agreement of the parties was merely a scrivener's error.

## II. SUFFICIENCY OF EVIDENCE

Next, Handsom and Muasau argue that the State offered insufficient evidence to prove first degree burglary because it failed to show that they intended to commit a crime in addition to unlawful entry. We conclude that the State presented sufficient evidence to prove that they committed first degree burglary based on their forced entry into the trailer, the ski masks and flak vest, the presence and use of weapons, threats, and the crimes against persons and property committed therein.

We review insufficient evidence claims for whether, when viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201.

The trier of fact makes credibility determinations, which we will not review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We also defer to the trier of fact on issues of conflicting testimony and the persuasiveness of evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

### A. First Degree Burglary

One commits first degree burglary if,

> with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the

6

building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

RCW 9A.52.020(1). The intent to commit a specific named crime inside the burglarized building is not an "element" of burglary. *State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). The intent required to prove burglary is simply the intent to commit any crime against a person or property inside the burglarized premises. *Bergeron*, 105 Wn.2d at 4. The jury may determine that a defendant intended to commit a crime against a person or property by making inferences "from the facts and circumstances surrounding the commission of the act and from conduct which plainly indicates such intent as a matter of logical probability." *State v. Kilponen*, 47 Wn. App. 912, 919, 737 P.2d 1024, *review denied*, 109 Wn.2d 1019 (1987).

The State need not prove that the principal and accomplice share the same mental state. *State v. Bockman*, 37 Wn. App. 474, 491, 682 P.2d 925, *review denied*, 102 Wn.2d 1002 (1984). As long as the jury is unanimous that the defendant was a participant, it is not necessary that the jury be unanimous that the defendant was a principal or an accomplice where there is evidence of both manners of participation. *See State v. Carothers*, 84 Wn.2d 256, 261-62, 525 P.2d 731 (1974), *overruled on other grounds by State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984).

Here, the trial court instructed the jury:

(1) That on or about the 8th day of August, 2010, the defendant or an accomplice entered or remained unlawfully in a building;
(2) That the entering or remaining was with intent to commit a crime against a person or property therein;
(3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged was armed with a deadly weapon; and
(4) That any of these acts occurred in the State of Washington.

7

CP at 51, 185.

Handsom and Muasau contend, specifically, that the State failed to prove that they intended to commit any other crime in addition to unlawfully entering Parrott's trailer. They cite *State v. Sandoval*, 123 Wn. App. 1, 94 P.3d 323 (2004), to support their claim. In *Sandoval*, an intoxicated Sandoval kicked in the front door of a stranger's home in the middle of the night, went inside, and shoved the occupant. 123 Wn. App. at 3. A jury found Sandoval guilty of burglary, but Division Three of this court reversed because the State failed to show that Sandoval entered the home intending to commit another crime. *Sandoval*, 123 Wn. App. at 5. Division Three reasoned that Sandoval loudly kicked open the door and shoved the stranger only when the stranger confronted him. *Sandoval*, 123 Wn. App. at 5. And, Sandoval did not know the homeowner, and he was surprised to see anybody home. *Sandoval*, 123 Wn. App. at 5.

The facts here differ substantially. Unlike the drunken Sandoval, who was not expecting to find anyone inside the home he unlawfully entered, here at least one of the accomplices knew who lived in Parrott's trailer and that someone was home; and here, Handsom arrived armed with an assault rifle and wearing a military-style ballistic flak vest and ski mask. And unlike Sandoval, who drunkenly stumbled into the home and shoved the home's resident only after the resident confronted him, here Handsom, Muasau, and the others confronted Edmiston and Parrott inside the trailer and forced Edmiston and Parrott onto their hands and knees at gunpoint. Then Muasau threatened and assaulted them before Davis and Muasau destroyed Parrott's trailer.

Muasau also cites *State v. Woods*, which involved a mother's estranged son, who was only permitted to enter the mother's apartment when she was home. 63 Wn. App. 588, 589, 821 P.2d 1235 (1991). One day the mother was home sick from work, and the son, who believed that his mother was at work, broke into the mother's house with another man to recover the son's jacket. *Woods*, 63 Wn. App. at 589-90. As the door opened, the mother yelled at them before the men fled without taking the jacket. *Woods*, 63 Wn. App. at 590. A jury convicted the son of burglary, but Division One reversed, reasoning that the men lacked intent to commit another crime after entering the home unlawfully. *Woods*, 63 Wn. App. at 591.

While both cases involved individuals breaking into someone else's home with the help of others to retrieve personal property (or Davis's "gold"), the similarities end there. In *Woods*, the men did not know the mother was home until they entered and fled upon learning someone was home; here, Davis spoke with Edmiston through the door before breaking in and the men entered the trailer with guns and military-style equipment, before confronting its occupants. Specifically, Muasau confronted Parrott, pulled the telephone from his hands, and smashed it to pieces before directing his associates to "[s]moke 'em." 3 VRP at 225. Finally, unlike the men in *Woods* who immediately left the scene without saying anything, Muasau stayed to demolish the trailer and strike Parrott before leaving. Thus, Muasau's reliance on *Woods* is misplaced.

Viewing the evidence here in a light most favorable to the State, any rational juror could have found that Handsom and Muasau or an accomplice intended to commit a crime after unlawfully entering Parrott's trailer. Therefore, we affirm Handsom and Muasau's first degree burglary convictions.

9

B. Felony Harassment

Muasau next argues that the State failed to prove felony harassment because it did not show that he knowingly threatened a future harm against Parrott. The jury heard sufficient evidence to convict Muasau.

A person is guilty of harassment if, without lawful authority, he knowingly threatens to cause bodily injury immediately or in the future to the person threatened; and, the person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. RCW 9A.46.020(1)(a)(i), (1)(b). In order to convict an individual of felony harassment based upon a threat to kill, the State must prove that the person threatened was placed in reasonable fear that the threat to kill would be carried out as an element of the offense. *State v. C.G.*, 150 Wn.2d 604, 612, 80 P.3d 594 (2003).

1. Knowing threat

First, Muasau contends that the State did not prove that he knowingly threatened Parrott. To knowingly threaten another, a defendant must subjectively know that he is communicating a threat, and know that "the communication he or she imparts directly or indirectly is a threat of intent to cause bodily injury to the person threatened or to another person." *State v. J.M.*, 144 Wn.2d 472, 481, 28 P.3d 720 (2001). Here, after smashing Parrott's phone and forcing him to his hands and knees, Muasau called out, "Smoke 'em." 3 VRP at 225. Edmiston and Parrott interpreted "[s]moke 'em" as a threat to kill, and Parrott began praying for his life. Davis also interpreted "[s]moke 'em" as a threat to kill because he intervened, "[N]o, you can't kill him." 3 VRP at 225. Viewing this evidence in the light most favorable to the State, any rational trier of

10

fact could reasonably conclude that Muasau subjectively knew that, in ordering armed men to "[s]moke 'em," he communicated a threat of intent to cause Parrott bodily injury.

## 2. Immediate or future harm

Second, Muasau argues that the State only proved that he communicated a threat of immediate harm, not future harm, as was required. Muasau's charging information and to-convict instruction both stated that that the threat was to kill Parrott "immediately or in the future." CP at 2, 59. The instruction defining threat, however, stated, "Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future." CP at 60. Muasau asserts, then, that the law of the case limited the State by requiring proof of a threat of future harm and not one of immediate harm.

Muasau cites *State v. Willis*, 153 Wn.2d 366, 103 P.3d 1213 (2005); *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998); and *State v. Nam*, 136 Wn. App. 698, 150 P.3d 617 (2007). Because none of these cases, however, stands for the proposition that a discrepancy between to-convict instructions and definitional instructions are resolved in favor of the definitional instruction, we discuss them no further.

Because the unchallenged to-convict instruction for felony harassment correctly aligned with our statute and Muasau's charging information, the trial court properly informed the jury of the necessary elements to convict Muasau for harassment. A definitional instruction for "threat" merely defines a threat. If that definition is inserted into the to-convict instruction used here, the to-convict instruction still advises the jury that evidence of a threat of immediate or future harm would satisfy the necessary elements of harassment. Viewing the evidence in the light most

favorable to the State, any rational trier of fact could reasonably conclude that Muasau's order to "[s]moke 'em," conveyed a threat of immediate or future bodily injury. Accordingly, we affirm Muasau's felony harassment conviction.

### C. Fourth Degree Assault

Next, Muasau claims that the State failed to prove fourth degree assault because it did not show that he committed an intentional, offensive touching. Again, sufficient evidence supports Muasau's fourth degree assault conviction.

Assault is a willful act. *State v. Davis*, 119 Wn.2d 657, 663, 835 P.2d 1039 (1992). The intent required to prove an assault is "merely the intent to make physical contact with the victim, not the intent that the contact be a malicious or criminal act." *State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280, *review denied*, 171 Wn.2d 1029 (2011). Fourth degree assault is an assault with little or no bodily harm, committed without a deadly weapon. *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012).

Here, the trial court instructed the jury of the following elements to convict Muasau of fourth degree assault:

> (1) That on or about the 8th day of August, 2010, the defendant or an accomplice assaulted Rusty Parrott; and
> (2) That this act occurred in the State of Washington.

CP at 63. The trial court defined assault as "an intentional touching or striking of another person, that is harmful or offensive regardless of whether any physical injury is done to the person." CP at 65.

The State presented considerable evidence from which the jury could have reasonably inferred Muasau's intent to assault Parrott. Here, Edmiston testified that Muasau hit Parrott on the side of the head. Parrott also testified that Muasau hit him on his right cheek with his fist. Next, taking this evidence in a light most favorable to the State, the jury could reasonably infer that hitting someone in the face would be harmful or offensive. And, given the context of Muasau's activities in the trailer, the jury could reasonably infer from Muasau's apparent anger and willingness to be physical with Parrott that he intended to strike Parrott. For example, Muasau had physically taken the telephone from Parrott and smashed it. Muasau also forced Edmiston and Parrott onto the floor before demolishing the trailer's bedroom. Viewing this evidence in a light most favorable to the State, the jury could reasonably infer that Muasau intended to strike Parrott in the face, an offensive or harmful act. Accordingly, we affirm Muasau's fourth degree assault conviction.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Muasau next claims that his defense counsel provided ineffective assistance when he failed to argue that Muasau's felony harassment and first degree burglary convictions amounted to same criminal conduct for sentencing purposes. Muasau does not demonstrate deficient performance or prejudice, so he therefore cannot prevail.

13

A. Standard of Review and Rules of Law

To demonstrate ineffective assistance of counsel, a defendant must show that his lawyer's representation was deficient and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when but for counsel's deficient performance, the proceeding's result would have been different. *McFarland*, 127 Wn.2d at 335. If a party fails to satisfy either prong, we need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

A sentencing court calculates the offender score by adding current offenses and prior convictions. RCW 9.94A.589(1)(a). The offender score for each current offense includes all other current offenses unless the trial court finds "that some or all of the current offenses encompass the same criminal conduct." RCW 9.94A.589(1)(a). Where the court makes such a finding, those current offenses are counted as one crime for sentencing purposes. RCW 9.94A.589(1)(a). Offenses constitute the same criminal conduct if they are (1) committed with the same criminal intent, (2) committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). In determining whether multiple crimes constitute the same criminal conduct, courts consider how intimately related the crimes are, whether between the crimes charged there was any substantial change in the nature of the criminal objective, and whether one crime furthered the other. *State*

*v. Burns*, 114 Wn.2d 314, 318, 788 P.2d 531 (1990). And crimes involving multiple victims must be treated separately. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

And, we have an antimerger statute for burglary, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor[e] as well as for the burglary, and may be prosecuted for each crime separately." RCW 9A.52.050. This statute gives trial courts discretion to punish burglary, even if the burglary and another crime encompass the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992).

## B. Analysis

First, Muasau cannot demonstrate deficient performance. Because the burglary involved two victims in the trailer, Edmiston and Parrott, and the felony harassment conviction involved just one victim, Parrott, the crimes involved different victims and thus, would not constitute same criminal conduct. *See* RCW 9.94A.589(1)(a); *Dunaway*, 109 Wn.2d at 215.

Second, because of the antimerger statute, even if Muasau's first degree burglary, felony harassment, or fourth degree assault convictions encompassed same criminal conduct, the trial court had the legal authority to punish Muasau separately on each offense. *See Lessley*, 118 Wn.2d at 781. Muasau cannot now show that the trial court would not have exercised its discretion to apply the antimerger statute. Unable to show deficient performance, Muasau does not demonstrate ineffective assistance of counsel.

## IV. SMITH'S SAG

Smith raises a series of other issues in his SAG. None of these claims has merit.

## A. Grounds for Continuance

Smith claims that defense counsel's vacation plans were not adequate grounds for a continuance under CrR 3.3. His claim mischaracterizes the trial court's stated reasons for granting the continuance. Here, in addition to defense counsel being on a preplanned vacation during the September 16, 2010 pretrial continuance hearing, defense counsel needed more time to adequately prepare, negotiate, and investigate. The trial court also noted the case's complexity, that it involved a third-strike offense and codefendants. Accordingly, the trial court did not continue Smith's trial solely because of counsel's vacation; and, it did not abuse its discretion in continuing trial in furtherance of the administration of justice.

## B. Davis's Credibility

Smith also argues that Davis's credibility was suspect and unreliable. But because credibility determinations are reserved for the trier of fact, we defer to the jury on issues of witness credibility and will not review its determinations. *Thomas*, 150 Wn.2d at 874-75.

## C. Jury Instructions

Smith next argues that the trial court erred in reading the jury an incomplete instruction regarding Smith's right not to testify. The trial court instructed, "A defendant is not required to testify. You may not use the fact that a defendant has not testified to infer guilt or prejudice him in any way." CP at 406. Even had Smith objected to the instruction at trial to preserve this issue, he does not attempt to demonstrate how this instruction is incomplete.

16

D. Jury Trial Right: Third Strike Finding

Smith claims that the trial court violated his jury trial right when it imposed a third-strike sentence because the jury did not find that Smith had twice previously been convicted of strike offenses. He asserts that his classification as a persistent offender must be proved to a jury beyond a reasonable doubt, and that his classification as a persistent offender violates equal protection. He does not demonstrate error.

Our state and federal courts have already rejected the claim that a defendant is entitled to have a jury decide whether he is a persistent offender. *See State v. Smith*, 150 Wn.2d 135, 141-43, 75 P.3d 934 (2003), *cert. denied*, 541 U.S. 909 (2004). Thus, his claim fails on this issue.

Our courts have also already rejected his claim that his classification as a persistent offender arbitrarily discriminates between two classes of similarly situated recidivists. *See State v. Reyes-Brooks*, 165 Wn. App. 193, 206-07, 267 P.3d 465 (2011), *review granted on other grounds by* 175 Wn.2d 1020 (2012). Smith's claim fails.

E. Ineffective Assistance

Smith finally claims instances of ineffective assistance of counsel. He raises general claims relating to defense counsel's failure to object to unspecified points at trial, unspecified equal protection violations, improperly suppressed evidence, the State's failure to disclose evidence, and failure to request evidentiary hearings. His general, nonspecific claims fail to demonstrate deficient performance or prejudice. Therefore, his ineffective assistance claims fail.

17

No. 42509-2-II/No. 42522-0-II/
No. 42708-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Penoyar, J.

Bjorgen, J.

18