FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43240-4-II |
| Respondent, | |
| v. | |
| BARBARA ANN CLAYTON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Barbara Clayton appeals her convictions for second degree murder, malicious mischief, and unlawful possession of a firearm. She also appeals her judgment and sentence as a persistent offender under RCW 9.94A.570. She argues that (1) the trial court erred when it excluded evidence relevant to her defense, (2) the trial court violated her right to be free from double jeopardy when it merged her two murder convictions instead of vacating one of the convictions, and (3) her persistent offender sentence violates her due process and equal protection rights. We hold that (1) the trial court reasonably excluded the challenged evidence, (2) the trial court erred by not vacating one of Clayton's murder convictions, and (3) her persistent offender sentence did not violate due process and equal protection. We affirm Clayton's convictions for second degree murder (count I), unlawful possession of a firearm, and malicious mischief. We remand the case to the trial court with direction to strike her second degree felony murder (count II) from the judgment and sentence.

## FACTS

On April 1, 2011, Clayton shot and killed her boyfriend, Curtis Giffin. They, along with Clayton's minor daughter, had been living together for several years. In the months before the shooting, Clayton and Giffin had been arguing over Giffin's seeing another woman.

Before the shooting, Clayton and Giffin argued in a parking lot. Both parties entered separate cars. Clayton then "rammed" her car into Giffin's car and drove off. 4 Report of Proceedings (RP) at 126. Clayton returned to their home, told her daughter to pack her belongings, and said that they were leaving because Giffin had impregnated another woman. Clayton also retrieved a gun and placed it under a couch cushion. Giffin arrived at the house approximately 10 minutes later and began arguing with Clayton. Clayton obtained the gun and shot Giffin approximately four times. He died at the scene.

The State charged Clayton with premeditated first degree murder (count I) and second degree felony murder (count II). The State charged firearm enhancements for both counts and alleged that the shooting was a domestic violence incident. It further alleged the incident occurred within the sight or sound of Clayton's minor child. The State also charged Clayton with first degree unlawful possession of a firearm; and, for the car ramming incident, second degree malicious mischief. Clayton pleaded not guilty by reason of insanity.

Prior to trial, Clayton was interviewed by a psychologist, Dr. Donald Dutton, who diagnosed her as suffering from borderline personality disorder. Dutton believed that, at the time of the shooting, Clayton was in a transient psychotic state. He opined that Clayton felt a sense of abandonment that caused her to become extremely anxious and panicked. Dutton based his opinions on his own interviews with Clayton, police reports, psychological tests, Clayton's journal entries, and Clayton's phone calls from jail.

The State moved to prohibit Dutton from testifying about specific acts of domestic violence involving Clayton and Giffin that occurred prior to the shooting. The trial court granted the motion because Dutton did not know when the events had occurred and because no corroborating evidence existed. The court held that the danger of unfair prejudice outweighed

2

the probative value of the evidence. It also found a high risk of misleading the jury and confusing the issues.

The trial court permitted Dutton to testify about numerous events Clayton apprised him of, including her recollection of the day of the shooting; her early years growing up in California, including childhood traumas and abusive family relationships; her relationship history with other men, including their jealousies, control issues, and physical abuse perpetration; and, her history of parenting, including financial hardship and homelessness. Dutton could also testify about Clayton's perceptions of her relationship with Giffin, which included his being argumentative, abusive, violent, and an excessive alcohol user, as well as Clayton's daughter's observations about ongoing domestic violence between Clayton and Giffin and how Clayton would sometimes fight back. Additionally, Dutton could testify about psychological testing he performed and the bases for his diagnosis.

The State also moved to prohibit Clayton from introducing her post-arrest statements in the State's case-in-chief. The trial court granted the motion and held the statements were hearsay that did not fit within any exception.

The jury found Clayton guilty of the lesser included charge of second degree murder (count I), second degree felony murder (count II), unlawful possession of a firearm, and malicious mischief. The jury also found that she was armed with a firearm during the murder and that the murder was an aggravated domestic violence offense. Clayton moved to vacate her second degree murder conviction (count I) because it violated double jeopardy. The trial court merged count II, felony murder, into count I, second degree murder, for purposes of sentencing and noted this on the judgment and sentence. The court also merged the firearm enhancements.

The trial court found that Clayton was a persistent offender and sentenced her to life without parole. Clayton appeals.

## ANALYSIS

I.   EVIDENTIARY RULINGS

Clayton first argues that several of the trial court's evidentiary rulings deprived her of the right to present a defense. Because the court did not abuse its discretion, we affirm.

A criminal defendant has a constitutional right to present relevant, admissible evidence in her defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992). But this right is not absolute. *Rehak*, 67 Wn. App. at 162. The decision to admit or exclude evidence lies within the sound discretion of the trial court. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Neal*, 144 Wn.2d at 609 (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

A.   Psychologist's Testimony

Clayton asserts that the trial court erred when it prohibited Dutton from providing hearsay testimony about specific instances of abuse between Clayton and Giffin. We disagree.

Generally, hearsay evidence is inadmissible. ER 802. An expert may rely on inadmissible evidence as a basis for an opinion or inference if the facts or data utilized are the type reasonably relied on by experts in that particular field for forming opinions. ER 703. An expert may testify in terms of opinion or inference and the reasons behind it without prior disclosure of the underlying facts or data. ER 705. Additionally, relevant evidence may be excluded if the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs its probative value. ER 403.

4

Here, Clayton argues that the statements were admissible under ER 703 and 705. But the trial court concluded that the risk of confusing and misleading the jury outweighed the relevance of the evidence. Because Dutton did not know when the incidents occurred, the trial court was concerned that the jury might be misled into believing that the incidents had resulted in the shooting or that the shooting had been in self defense, something Clayton had not raised. Her sole defense was insanity.

Moreover, the trial court allowed Dutton to make general references to Clayton's allegations of abuse against Giffin. Dutton referenced Giffin and Clayton's abusive relationship and how it related to his findings regarding her mental state at the time of the shooting. Consequently, Dutton explained to the jury the reasoning used to arrive at his opinion. And Clayton did present specific instances of abuse through the testimony of her daughter, who witnessed some of the incidents. For the preceding reasons, the trial court did not abuse its discretion and there is no error.

B.      Clayton's Post-Arrest Statements

Clayton next argues that the trial court erred when it excluded her post-arrest statements as hearsay because they were admissible under the state of mind hearsay exception. Because the statements related to Giffin's actions rather than to Clayton's state of mind, the state of mind hearsay exception does not apply and we affirm.

Generally, a defendant's self-serving out-of-court statements are not admissible in the State's case-in-chief as an exception to the hearsay rule, when offered on his behalf. *State v. Bennett*, 20 Wn. App. 783, 787, 582 P.2d 569 (1978). To be admissible, they must fit within an exception to the rule. An out-of-court statement of the declarant's then existing state of mind is admissible as a hearsay exception. ER 803(a)(3). However, a declarant's out-of-court

statements are inadmissible when they relate to the conduct of another person who may have created the declarant's state of mind. ER 803(a)(3). *State v. Sublett*, 156 Wn. App. 160, 199, 231 P.3d 231 (2010).

In this case, Clayton contends that the trial court erred by excluding her out-of-court statements about past incidents of domestic violence. The proffered statements were made after the shooting and after Clayton drank a large amount of alcohol and was admitted to the hospital. The officer who accompanied her to the hospital heard her make the following comments: "I was his Negro slave"; "[t]hat mother fucker kicked me so hard with his boot"; "[h]e picked up an axe and threw it at me"; "[h]e was the worst of anyone in my entire life"; and "I've been beat up so bad." RP (Dec. 2, 2011) at 71. Clayton argues that these statements are admissible under the state of mind hearsay exception.

Because Clayton's statements at the hospital described Giffin's past conduct and did not reflect her state of mind, they were inadmissible. ER 803(a)(3); *Sublett*, 156 Wn. App. at 199. The trial court did not err when it excluded Clayton's statements at the hospital as hearsay.

C.    Impeachment

Next, Clayton argues that the trial court erred when it prohibited her from impeaching a witness's testimony. Because Clayton failed to make an offer of proof, this issue is not preserved for appeal.

The State called Joann Rardin, who testified about Clayton and Giffin's argument and car wreck in the parking lot. Clayton attempted to impeach Rardin with her prior statement to police. Not satisfied with Rardin's answers on cross examination, Clayton then attempted to impeach Rardin through the responding officer's testimony. The State objected that the officer's testimony regarding Rardin's statements constituted impeachment on a collateral matter, and the

trial court upheld the objection. Because the police officer was not able to testify about Rardin's statements and because Clayton did not make an offer of proof, this issue is not preserved for appeal. ER 103(a)(2).

For a prior statement to be admissible for impeachment purposes, the statement must be inconsistent with the witness's in-court testimony. *State v. Newbern*, 95 Wn. App. 277, 294, 975 P.2d 1041 (1999). Here, as the State points out, it is not possible to determine whether Rardin's statements at trial were inconsistent with her prior statements to police because the defense never made an offer of proof. ER 103(a)(2) requires that a party make an offer of proof where error is predicated on a ruling excluding evidence. Because Clayton failed to make an offer of proof, this issue is not preserved for appeal.

## II.  DOUBLE JEOPARDY

Clayton next argues that the trial court violated her right to be free from double jeopardy by merging her murder convictions rather than striking one of them from her judgment and sentence. We agree.

Double jeopardy violations are questions of law that we review de novo. *State v. Fuller*, 169 Wn. App. 797, 832, 282 P.3d 126 (2012), *review denied*, 176 Wn.2d 1006 (2013). The state and federal constitutions prohibit a defendant from being punished multiple times for the same offense. *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461 (2010); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. A conviction alone, even without an accompanying sentence, may constitute "punishment" in the double jeopardy context. *Turner*, 169 Wn.2d at 454-55 (citing *State v. Womac*, 160 Wn.2d 643, 657, 160 P.3d 40 (2007)). Accordingly, where a jury finds the defendant guilty of multiple alternative means of committing a crime, the trial court "'should enter a judgment on the greater offense only and sentence the defendant on that charge *without*

7

*reference to the verdict* on the lesser offense.'" *Turner*, 169 Wn.2d at 463 (quoting *State v. Trujillo*, 112 Wn. App. 390, 411, 49 P.3d 935 (2002)).

In *Fuller*, we determined that the trial court did not violate the defendant's right to be free from double jeopardy where it merged the defendant's two murder convictions at sentencing and included only one conviction in the judgment and sentence. 169 Wn. App. at 835. There, the trial court entered a judgment stating that the defendant was guilty of only one count of murder and sentenced him to only one count of murder. *Fuller*, 169 Wn. App. at 835. Because the judgment and sentence did not reference the other murder verdict, it did not violate the defendant's right to be free from double jeopardy. *Fuller*, 169 Wn. App. at 835. But, here, the trial court listed both merged counts on the judgment and sentence.[1]

Because the trial court did not sentence Clayton "'without reference to the verdict on the lesser offense,'" the sentence violates Clayton's right to be free from double jeopardy. *Turner*, 169 Wn.2d at 463 (quoting *Trujillo*, 112 Wn. App. at 411). And we remand to the trial court to strike her second degree felony murder conviction, count II, from the judgment and sentence.

## III. PERSISTENT OFFENDER SENTENCE

Finally, Clayton argues that her due process and equal protection rights were violated when the trial court sentenced her as a persistent offender because her prior convictions were not proved to a jury. Washington courts have already rejected these same arguments; therefore, there is no error.

Our Supreme Court has rejected Clayton's due process argument based on binding federal and state authority. *State v. Wheeler*, 145 Wn.2d 116, 34 P.3d 799 (2001). We are bound by our Supreme Court's precedent. *State v. McKague*, 159 Wn. App. 489, 514, 246 P.3d 558

---

[1] The judgment and sentence lists count II and states, "Merged into Count I." CP at 253.

8

(2011). Similarly, we have previously rejected Clayton's equal protection argument in *State v. Reyes-Brooks*, 165 Wn. App. 193, 207, 267 P.3d 465 (2011), and *State v. Williams*, 156 Wn. App. 482, 496-98, 234 P.3d 1174 (2010).

We affirm Clayton's convictions for second degree murder (count I), unlawful possession of a firearm, and malicious mischief. We remand the case to the trial court with direction to strike second degree felony murder (count II) from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Hunt, J.

Worswick, C.J.